

ATTORNEYS FOR APPELLANT

Gregory F. Zoeller
Attorney General of Indiana

Ian McLean
Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Glen E. Koch II
Boren Oliver & Coffey, LLP
Martinsville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

State of Indiana,

*Appellant-Plaintiff,*

v.

Braeden Terrell,

*Appellee-Defendant*

July 10, 2015

Court of Appeals Case No.
55A01-1501-CR-9

Appeal from the Morgan Circuit
Court

The Honorable Matthew G. Hanson,
Judge

Case No. 55C01-1410-CM-1502

**Crone, Judge.**

## Case Summary

[1] Braeden Terrell was placed on probation and was ordered not to possess or consume alcoholic beverages and not to possess firearms as conditions of his probation. As another condition of his probation, he waived "any and all" of

his search and seizure rights under state and federal law and agreed to submit to reasonable searches of his property or residence at any time by a probation officer. State's Ex. 2. During a home visit, a probation officer found alcoholic beverages in Terrell's kitchen and searched his nightstand for firearms and found marijuana and paraphernalia.

[2] The State charged Terrell with class B misdemeanor marijuana possession and class A misdemeanor paraphernalia possession. Terrell filed a motion to suppress the contraband, arguing that the search of the nightstand was unconstitutional under the Fourth Amendment of the U.S. Constitution and Article 1, Section 11 of the Indiana Constitution. The trial court granted the motion, finding that the search of the nightstand "went well beyond the scope of the reasonable searches up to that point." Appellant's App. at 15.

[3] The State appeals, claiming that the trial court erred in granting Terrell's motion to suppress. We agree. With respect to the Fourth Amendment, Terrell waived his search and seizure rights and agreed to submit to searches of his property and residence, and the search of the nightstand for firearms was not unreasonable. And as for Article 1, Section 11, the search was reasonable under the totality of the circumstances. Therefore, we reverse and remand.

## Facts and Procedural History

[4] In August 2014, Terrell was convicted in Hendricks County of class A misdemeanor operating a vehicle while intoxicated with endangerment and

placed on probation. On August 12, Terrell signed an order with the following probation conditions:

> 7. You shall not leave the State of Indiana and agree to waive extradition to the State of Indiana and to appear before the Court when so ordered by the Court.
>
> ….
>
> 9. You shall permit the Probation Officer and any Law Enforcement Officer assisting the Probation Officer to enter your residence and to ask reasonable questions about your activities. You shall sign a waiver to the search of your person or property when requested by the Probation Officer.
>
> 10. You shall not consume, or possess on your person or in your residence, any controlled substance (illegal drug) or drug paraphernalia, except as prescribed to you by a licensed physician. You shall submit to alcohol and drug tests when requested by the Probation Department or any Law Enforcement Officer.…
>
> 11. You shall not possess any firearm, destructive device, or dangerous weapon on your person, in your residence, or in your vehicle.
>
> ….
>
> You shall not consume, or possess on your person or in your residence, any alcoholic beverages, or enter into any establishment where alcoholic beverages are the primary product for sale. This includes all liquor stores, bars, taverns, and pubs.
>
> You shall be evaluated by a DMHA Certified substance abuse program within forty-five (45) days of today. You shall successfully complete and pay for any program referred by your Probation Officer.

State's Ex. A.

[5]     On August 27, Terrell signed a form entitled "Fourth Amendment Waiver of Rights as Condition of Probation," which reads in pertinent part as follows:

> Probationer specifically waives any and all rights as to search and seizure under the laws and Constitution of both the United States and the State of Indiana during his/her period of probation. Probationer agrees to submit to reasonable search and seizure of his/her person, property, vehicle, residence, and any other property under his/her control, at any time, by any Probation Officer, and any Law Enforcement Officer accompanying the Probation Officer.
>
> ….
>
> Probationer is informed of his/her Fourth Amendment rights and hereby knowingly and intentionally waives those rights to the extent provided in this waiver as a condition of probation.

State's Ex. 2.[1]

[6]     Also on that date, Terrell admitted to his probation officer, Cheryl Koch, that he had consumed alcohol four days earlier at a bachelor party in Tennessee that he had received court permission to attend. Koch told him that she would not file a probation violation notice because he had not yet received substance abuse treatment.

---

[1] The form also provides, "Probationer waives his/her Sixth Amendment right to consult with an attorney prior to signing this waiver of rights to search." State's Ex. 2. Terrell objected to this provision at the suppression hearing, but the trial court did not address the issue in its order. In his appellate brief, Terrell asserts that the Sixth Amendment of the U.S. Constitution and Article 1, Section 13 of the Indiana Constitution "guarantee the right of a person to have an attorney during criminal proceedings" and that "[i]nsofar as [he] was ordered to attend the probation meeting and ordered to sign the waiver without counsel, it violated his aforementioned rights." Appellee's Br. at 8 n.1. Other than the constitutional clauses themselves, Terrell cites no authority for this assertion.

[7]    In supervising Terrell's probation, Koch monitored his Facebook posts. On September 28, she saw a post indicating that Terrell was at a bar in downtown Indianapolis.[2] Based on these alcohol-related issues, Koch decided to conduct a home visit "[t]o see if [Terrell] was in compliance with his rules[.]" Tr. at 23.

[8]    Around 1:00 p.m. on October 2, Koch arrived at Terrell's home in Martinsville with probation officer Andrew Lillpop. Terrell allowed the officers inside. Terrell's girlfriend and a housecleaner were also in the home. Koch saw an almost empty whiskey bottle on the kitchen counter. She opened the refrigerator and found a case of beer inside. She also saw bottles of alcohol and cups beside the refrigerator.

[9]    Lillpop administered a portable breath test, which indicated that Terrell had not consumed alcohol. Lillpop then asked Terrell if "there were any dangerous weapons in the residence[.]" *Id*. at 34. Terrell said that "there were some in his safe […] in his bedroom." *Id*. at 35. Lillpop asked Terrell to show him the safe. According to Lillpop,

> [Terrell] took me back into the back bedroom I open[ed] the door or he open[ed] the door and he showed me where the guns were and the safe was locked there was an empty one there was one on top in a pouch and he had told me that that one wasn't working so I pulled that one out set it on the bed had Mr. Terrell go back into the front room so that I could look since I was looking I didn't want them standing over my shoulder for safety purposes. Um and then I looked in the nightstand and found marijuana and then at that time I immediately

---

[2] The record does not support the State's assertion that Terrell posted a photograph of himself inside the bar.

stopped the search left the marijuana there in the nightstand and um I called dispatch and Morgan County Sheriff's department came out to assist.

*Id*. at 36. Lillpop searched the nightstand because it was a "common[]place to hide a firearm[.]" *Id*. at 37. He also found marijuana paraphernalia in the nightstand.

[10] The State charged Terrell with class A misdemeanor paraphernalia possession and class B misdemeanor marijuana possession. Terrell filed a motion to suppress "all items seized in this case because the search that preceded the seizure was made without any suspicion that [he] possessed controlled substances, and was simply an investigatory probation search, impermissible under [Article 1, Section 11] of Indiana's Constitution as well as the 4th Amendment" of the U.S. Constitution. Appellant's App. at 12. After a hearing, the trial court issued an order granting Terrell's motion to suppress, finding that "the search of the dresser/nightstand revealing suspected marijuana went well beyond the scope of the reasonable searches up to that point." *Id*. at 15. The State now appeals.

## Discussion and Decision

[11] "The State has the burden of demonstrating that the measures it used to seize the information or evidence were constitutional." *State v. Augustine*, 851 N.E.2d 1022, 1025 (Ind. Ct. App. 2006).

> When appealing the grant of a motion to suppress, the State appeals from a negative judgment and must show the trial court's ruling was contrary to law. This Court will reverse a negative judgment only

> when the evidence is without conflict and all reasonable inferences lead to a conclusion opposite that reached by the trial court. We neither reweigh the evidence nor judge the credibility of the witnesses, and we consider only the evidence most favorable to the judgment.

*Id.* (citations omitted). "[T]he ultimate determination of the constitutionality of a search or seizure is a question of law that we consider de novo." *Carpenter v. State*, 18 N.E.3d 998, 1001 (Ind. 2014).

[12] "Both the Fourth Amendment to the United States Constitution and Article [1], Section 11 of the Indiana Constitution require in general that searches should be conducted pursuant to a warrant supported by probable cause." *Schlechty v. State*, 926 N.E.2d 1, 3 (Ind. 2010) (footnotes omitted), *cert. denied* (2011).[3] "And both this jurisdiction and the federal courts have recognized various exceptions to the warrant requirement." *Id.* The State contends that Lillpop's warrantless search of Terrell's nightstand did not violate either constitution. We address each in turn.

## Section 1 – The search of the nightstand did not violate the Fourth Amendment of the U.S. Constitution.

[13] "The fundamental purpose of the Fourth Amendment is to protect the legitimate expectations of privacy that citizens possess in their persons, their

---

[3] *See* U.S. CONST. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."); IND. CONST. art. 1, § 11 ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.").

homes, and their belongings." *Montgomery v. State*, 904 N.E.2d 374, 377-78 (Ind. Ct. App. 2009), *trans. denied*. In *Vanderkolk v. State*, No. 79S04-1411-CR-718, 2015 WL 3608834 (Ind. June 9, 2015), a Fourth Amendment case that was decided after this appeal was fully briefed, the Indiana Supreme Court held that probationers "who have consented or been clearly informed that the conditions of their probation … unambiguously authorize warrantless and suspicionless searches, may thereafter be subject to such searches during the period of their probationary … status." *Id.*, slip op. at *4. Here, Terrell waived "any and all rights as to search and seizure" under state and federal law and agreed to submit to "reasonable search and seizure" of his property or residence at any time by any probation officer. State's Ex. 2. In his motion to suppress, Terrell argued that the search of the nightstand was unconstitutional because it was not based on suspicion that he possessed controlled substances. But under *Vanderkolk*, this is no longer a valid objection to the search. The question before us is simply whether the search was "reasonable." *See id.* (waiver form); *Schlechty*, 926 N.E.2d at 6 ("[A]ll government searches, whether or not conducted pursuant to voluntary consent, must be 'reasonable.'").

[14] Depending on the terms of a probationer's consent, in many cases only the method of execution, and not the scope, of the search would be subject to a reasonableness challenge. *Cf. Schlechty*, 926 N.E.2d at 6-7 ("For example the Fourth Amendment would not condone the indiscriminate ransacking of a probationer's home at all hours, or the pumping of his or her stomach, simply because a probation term included a search condition."). The voluntariness of

the consent could be considered questionable in light of a probationer's negligible bargaining power and the Hobson's choice of either signing the consent form or going to prison.[4] But unless and until our supreme court limits *Vanderkolk* or further defines its parameters, we must conclude that where, as here, a probationer has waived any and all of his search and seizure rights and agreed to submit to searches of his property and residence at any time by a probation officer, a nondestructive daytime search of the probationer's nightstand for firearms is not unreasonable under the Fourth Amendment.

## Section 2 – The search of the nightstand did not violate Article 1, Section 11 of the Indiana Constitution.

[15] The purpose of Article 1, Section 11 of the Indiana Constitution "is to protect from unreasonable police activity those areas of life that Hoosiers regard as private." *State v. Quirk*, 842 N.E.2d 334, 339-40 (Ind. 2006). "The provision must receive a liberal construction in its application to guarantee the people against unreasonable search and seizure." *Id*. at 340. Under the Indiana Constitution, the legality of a search depends on whether government conduct

---

[4] A Hobson's choice is "an apparently free choice that is really no choice at all." *Gray v. State*, 841 N.E.2d 1210, 1218 (Ind. Ct. App. 2006), *trans. denied*. In the civil context, a "'standardized contract … imposed and drafted by the party of superior bargaining strength [that] relegates to the subscribing party only the opportunity to adhere to the contract or reject it'" is called an adhesion contract. *Sanford v. Castleton Health Care Ctr., LLC*, 813 N.E.2d 411, 417 (Ind. Ct. App. 2004) (quoting *Pigman v. Ameritech Pub., Inc.*, 641 N.E.2d 1026, 1035 (Ind. Ct. App. 1994)), *trans. dismissed* (2006). An adhesion contract is unconscionable and therefore unenforceable if it is "such as no sensible man not under delusion, duress or in distress would make, and such as no honest and fair man would accept." *Id*. (citation, quotation marks, and alteration omitted). One could argue that consent-to-search forms signed by probationers bear many similarities to unconscionable adhesion contracts, but that concept thus far has no parallel in criminal law.

was reasonable under the totality of the circumstances. *Tuggle v. State*, 9 N.E.3d 726, 735 (Ind. Ct. App. 2014), *trans. denied*.

[16] In prior cases, the Indiana Supreme Court has stated that the reasonableness of a search "turns on a balance of: 1) the degree of concern, suspicion, or knowledge that a violation has occurred; 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities; and 3) the extent of law enforcement needs." *Id*. (citing *Litchfield v. State*, 824 N.E.2d 356, 359 (Ind. 2005)). "[T]here may well be other relevant considerations under the circumstances." *Litchfield*, 824 N.E.2d at 361. In light of *Vanderkolk*'s expansive endorsement of warrantless and suspicionless probation searches under the Fourth Amendment, it is questionable whether a separate *Litchfield* analysis is required here. Unless and until our supreme court specifically says otherwise, however, we shall continue to follow existing precedent and balance the three *Litchfield* factors and other relevant considerations in determining the reasonableness of probation searches under the Indiana Constitution.

[17] Regarding the first factor, Lillpop's suspicion that a firearm might be in the nightstand was purely conjectural, but Terrell had waived any and all of his search and seizure rights and agreed to submit to searches of his property and residence. As for the second factor, the degree of intrusion on Terrell's ordinary activities was substantial, but he was on probation and had agreed to submit to the search as a condition of his probation. And finally, regarding the extent of law enforcement needs, even Terrell concedes that "the courts have a high degree of need to monitor probationers," Appellee's Br. at 16, and he cites no

relevant authority for his assertion that Lillpop was obligated to stop searching for firearms after he found a probation violation. When the factors are balanced and Terrell's consent to the search is taken into account, we conclude that the search of the nightstand was not unreasonable under the totality of the circumstances and therefore did not violate Article 1, Section 11 of the Indiana Constitution. Consequently, we reverse the trial court's grant of Terrell's motion to suppress and remand for further proceedings.

Reversed and remanded.

Brown, J., and Pyle, J., concur.