

FILED

May 18 2016, 8:20 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Richard J. Thonert
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Ian McLean
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Lonny Hodges,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | May 18, 2016<br><br>Court of Appeals Case No.<br>43A03-1507-CR-843<br><br>Interlocutory Appeal from the<br>Kosciusko Circuit Court<br><br>The Honorable Michael W. Reed,<br>Judge<br><br>Trial Court Cause No.<br>43C01-1403-FC-176 |

**Crone, Judge.**

# Case Summary

[1] While on probation for other crimes, Lonny Hodges was charged with class C felony possessing chemical reagents or precursors with intent to manufacture a controlled substance, and class D felony possession of methamphetamine. The evidence supporting these charges was discovered during a warrantless search of a garage on Hodges's property. Hodges filed a motion to suppress the evidence, arguing that the warrantless and suspicionless search violated his constitutional rights pursuant to both the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution. The trial court denied the motion. The trial court certified its decision at Hodges's request, and we accepted jurisdiction of this interlocutory appeal. Finding no constitutional violation, we affirm the denial of the motion to suppress.

# Facts and Procedural History[1]

[2] Hodges was convicted of certain unrelated crimes and, as part of his sentences, began serving probation on December 31, 2013. On that date, Hodges met with his probation officer, Rene Osborn, and reviewed the terms and conditions of his probation with her. He signed an acknowledgement of the conditions of his probation which provides in relevant part: "You waive your right against search and seizure, and shall permit a Probation Officer, or any law enforcement officer acting on a Probation Officer's behalf, to search your

---

[1] We held oral argument on April 19, 2016, in Indianapolis. We commend counsel for the quality of their advocacy.

person, residence, motor vehicle, or any location where your personal property may be found, to insure compliance with probation." Appellant's App. at 12.[2] Just above Hodges's signature, the document reads:

> I have read the foregoing Order of Court Specifying Conditions of Probation and Additional Conditions of Probation and have had them explained to me and by my signature, acknowledge receiving a copy of this document and agree to comply with the conditions of probation set forth above. I understand I have a right to request the Court for modification of any of my conditions if I can show just cause therefor.

*Id*. at 13.

[3] Prior to Hodges's probationary period, around late springtime 2013, Indiana State Police Senior Trooper Brandon McBrier conducted a traffic stop of an individual named Michael Meade. Meade identified himself as Hodges's brother-in-law and informed Trooper McBrier that Hodges had been manufacturing methamphetamine in a garage located on Hodges's property in Mentone. Meade described the location of Hodges's property to Trooper McBrier and described the property as consisting of a trailer with a detached garage. That summer, Trooper McBrier spoke to Sergeant Matt Rapp of the

---

[2] The State acknowledges that although the probationary term at issue here relates to a conviction entered on trial court cause number 43D03-1212-FD-766, the signed acknowledgement of the conditions of probation offered and admitted into evidence relates to a conviction entered on trial court cause number 43D03-1307-FD-474. The sentence on that conviction was ordered to be served consecutive to the sentence imposed in trial court cause number 43D03-1212-FD-766. While it was not specifically offered into evidence, the trial court took judicial notice of the conditions of probation document in 43D03-1212-FD-766. Tr. at 89. Hodges makes no claim that the content of that document materially differs from the document admitted into evidence.

Kosciusko County Drug Task Force, who confirmed that the Task Force was aware of information that indicated that Hodges was manufacturing methamphetamine. Then, during the fall of 2013, Trooper McBrier conducted a traffic stop of a female driver who told him that Hodges was a methamphetamine "cook." Tr. at 32.

[4] Sometime in February 2014, Trooper McBrier ran a computer search of pseudoephedrine and ephedrine purchases and discovered that between 2007 and February 2014, Hodges made approximately sixty-six purchases. Hodges's wife made sixty-three purchases during the same time period. Trooper McBrier believed that the consistent pattern of purchases was indicative of individuals who are buying the drug to manufacture methamphetamine.

[5] Trooper McBrier subsequently learned that Hodges was on probation, so he spoke to Hodges's probation officer, Osborn, about the information that he had gathered about Hodges. Osborn decided that she wanted to visit Hodges at his home to check his compliance with the probation conditions. She asked Trooper McBrier to accompany her due to his experience with the hazardous chemicals used to manufacture methamphetamine, and they decided that the home visit would occur on February 27, 2014. However, when Hodges appeared a day early for his probation appointment on February 26, Osborn decided to conduct the home visit with Hodges right after the appointment, and she contacted Trooper McBrier. Osborn required Hodges to submit to a drug test, and then she, Trooper McBrier, and Hodges proceeded to the address in

Mentone that Hodges had provided to probation as his home address. Appellant's App. at 11.

[6] When they arrived at Hodges's property, Hodges informed Osborn and Trooper McBrier that his home had burned down and that only the detached garage was left. He stated that he was actually living in his in-laws' home, which was approximately 100 yards away from the garage. Trooper McBrier noticed that snow had been removed from the drive into the garage. Osborn told Hodges that she wanted to search the garage, and Hodges opened the door. Trooper McBrier and Osborn entered the garage and searched it. They found a twelve-gauge shotgun and several clumps of a white crystal-like substance, as well as numerous chemicals, precursors, and other items used to manufacture methamphetamine. Osborn later took Hodges to his in-laws' residence and searched his bedroom and a vehicle, but found nothing noteworthy.

[7] On March 7, 2014, the State charged Hodges with class C felony possessing chemical reagents or precursors with intent to manufacture a controlled substance, and class D felony possession of methamphetamine. Hodges filed a motion to suppress the evidence obtained during the search of his garage, arguing that the warrantless and suspicionless search violated his rights under the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution. Following a hearing, the trial court entered its findings of fact and conclusions thereon denying the motion to suppress. This interlocutory appeal ensued.

# Discussion and Decision

[8] "When reviewing a trial court's denial of a defendant's motion to suppress, we view conflicting factual evidence in the light most favorable to the ruling but we will also consider substantial and uncontested evidence favorable to the defendant." *Wertz v. State*, 41 N.E.3d 276, 279 (Ind. Ct. App. 2015), *trans. denied*. However, the constitutionality of a search or seizure is a question of law, which we review de novo. *Id*.

[9] "Both the Fourth Amendment to the United States Constitution and Article [1], Section 11 of the Indiana Constitution require in general that searches should be conducted pursuant to a warrant supported by probable cause." *State v. Schlechty*, 926 N.E.2d 1, 3 (Ind. 2010) (footnotes omitted), *cert. denied* (2011).[3] "And both this jurisdiction and the federal courts have recognized various exceptions to the warrant requirement." *Id*. "When a search is conducted without a warrant, the State has the burden of proving that an exception to the warrant requirement existed at the time of the search." *Sugg v. State*, 991 N.E.2d 601, 607 (Ind. Ct. App. 2013), *trans. denied*. With regard to the Fourth Amendment, our supreme court in *Schlechty* recognized that "a warrantless search may be justified on the basis of reasonable suspicion to believe that the

---

[3] The Fourth Amendment to the United States Constitution provides, "The right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause …." Article 1, Section 11 of the Indiana Constitution provides, "The right of people to be secure in their persons, houses, papers, and effects, against unreasonable search and seizure, shall not be violated; and no warrant shall issue, but upon probable cause …."

probationer has engaged in criminal activity and that a search condition is one of the terms of probation." 926 N.E.2d at 6 (citing *United States v. Knights*, 534 U.S. 112, 122 (2001)).

[10] In the current case, Hodges asserts that the warrantless search of his garage was unconstitutional because it was not based upon reasonable suspicion that he had violated his probation or was engaged in criminal activity and also because the search condition contained in the rules of his probation is invalid. The State maintains that the search complied with constitutional dictates and that the need for reasonable suspicion was obviated because Hodges waived his rights as to search and seizure and agreed, by virtue of the terms and conditions of his probation, to warrantless and suspicionless searches of his property. Although Hodges's motion to suppress alleged that the search violated both the Fourth Amendment and Article 1, Section 11, he appears to have abandoned his Fourth Amendment challenge on appeal and asserts only that the search violated Article 1, Section 11. Thus, we address the arguments presented under our state constitution.

## The search of the garage did not violate Article 1, Section 11 of the Indiana Constitution.

## Section 1 – Reasonable suspicion is not required for probation searches conducted pursuant to a valid search condition.

[11] We first address Hodges's claim that the search of his garage was unconstitutional because it was not based upon reasonable suspicion. In *State v. Vanderkolk,* 32 N.E.3d 775 (Ind. 2015), a Fourth Amendment case, our supreme

court very broadly held that "Indiana probationers and community corrections participants who have consented or been clearly informed that the conditions of their probation or community corrections program unambiguously authorize warrantless and suspicionless searches, may thereafter be subject to such searches during the period of their probationary or community corrections status." *Id*. at 779. The *Vanderkolk* court specifically distinguished its prior decision in *Schlechty*, also a Fourth Amendment probation search case, stating that although "we noted that reasonable suspicion existed" in *Schlechty*, "we did not hold that reasonable suspicion was an essential prerequisite to a search of a probationer whose conditions of probation contained a valid search condition." *Id.* The crux of the *Vanderkolk* holding is that a probation search need not be supported by reasonable suspicion and may be predicated solely upon a valid search condition contained in the conditions of probation. Thus, a probationer's argument that a probation search lacked reasonable suspicion is unequivocally no longer a legitimate objection under the Fourth Amendment and *Vanderkolk*. *See State v. Terrell*, 40 N.E.3d 501, 505 (Ind. Ct. App. 2015). Instead, only the method of execution, and not the scope, of the search would be subject to a reasonableness challenge. *Id*. [4]

[12] Hodges claims that despite our supreme court's broad holding in *Vanderkolk*, reasonable suspicion is still required to support a warrantless probation search

---

[4] Hodges makes no claim that the nondestructive daytime search was conducted in an unreasonable manner.

under the Indiana Constitution. While the language of Article 1, Section 11 is virtually identical to its Fourth Amendment counterpart, our supreme court has "made an explicit point to interpret and apply Section 11 independently from federal Fourth Amendment jurisprudence." *Mitchell v. State*, 745 N.E.2d 775, 786 (Ind. 2001). Generally, under Indiana law, the reasonableness of a search or seizure turns on the "totality of the circumstances" and a balance of: (1) the degree of concern, suspicion, or knowledge that a violation has occurred; (2) the degree of intrusion the method of the search imposes on the citizen's ordinary activities; and (3) the extent of law enforcement needs. *Litchfield v. State*, 824 N.E.2d 356, 361 (Ind. 2005).

[13]   However, in light of "*Vanderkolk's* expansive endorsement of warrantless and suspicionless probation searches under the Fourth Amendment" we conclude that a separate *Litchfield* analysis is not required here. *Cf. Terrell*, 40 N.E.3d at 506 (stating that it was "questionable" whether a separate *Litchfield* analysis is required in considering the reasonableness of probation searches in light of *Vanderkolk* holding). Indeed, we agree with the State that such separate analysis is unnecessary, as it "would have made little sense for our Supreme Court to pen such a broad holding if the Court had simply intended to continue a requirement of prior reasonable suspicion for any probation-related search." Appellee's Br. at 18. Because lack of reasonable suspicion is no longer a legitimate objection to the constitutionality of Indiana probation searches pursuant to *Vanderkolk*, we turn to Hodges's remaining assertion regarding the

validity of the warrantless search provision contained in his conditions of probation.

## Section 2 – The search condition clearly expressed and unambiguously informed Hodges that he could be subject to warrantless and suspicionless searches.

[14] Hodges contends that the warrantless search provision contained in his conditions of probation is invalid because it did not specifically advise him that he was waiving his right to search and seizure under the Indiana Constitution or that he was specifically consenting to warrantless and suspicionless searches.[5] The *Vanderkolk* court did not specify what a valid search condition must look like under the Fourth Amendment or the Indiana Constitution, but merely stated that Indiana probationers must be "unambiguously informed of a clearly expressed search condition in the conditions of their release to probation." 32 N.E.3d at 779.[6]

[15] The U.S. Supreme Court has concluded that a probation order providing that the probationer would "[s]ubmit his … person, property, place or residence, vehicle, personal effects, to search at anytime, with or without a search warrant,

---

[5] Without citation to authority, Hodges also urges that the search term here is unconstitutionally vague because it fails to identify a specific residence, vehicle, or other specific locations where his personal property would be located. This argument is unpersuasive.

[6] The *Vanderkolk* court did imply that the waiver stating "I agree and specifically waive any and all rights as to search and seizure under the laws and constitutions of both the United States and the State of Indiana" would have been valid had it not been "fatally compromised" by the waiver's closing statement conditioning any such searches upon the existence of probable cause. 32 N.E.3d at 778.

warrant of arrest or reasonable cause by any probation officer or law enforcement officer" constituted a "clearly expressed" search condition that "unambiguously informed" the defendant who signed the order submitting to the condition. *See Knights*, 534 U.S. at 119. In *Terrell*, we implied that much less substantial language providing that the probationer waived "any and all rights as to search and seizure under the laws and Constitution of both the United States and the State of Indiana" and agreed to submit to "reasonable search and seizure" of his property or residence at any time by any probation officer, or any accompanying law enforcement officer, was a valid and clearly expressed search condition. *See Terrell*, 40 N.E.3d at 503, 505.

[16] The search condition here provided: "You waive your right against search and seizure, and shall permit a Probation Officer, or any law enforcement officer acting on a Probation Officer's behalf, to search your person, residence, motor vehicle, or any location where your personal property may be found, to insure compliance with probation." Appellant's App. at 12. First, because Hodges signed the rules of probation submitting to the foregoing search condition, we conclude that he was "unambiguously" aware of it. *See, e.g.*, *Samson v. California*, 547 U.S. 843, 852 (2006) (looking to prior decision in *Knights* and noting that probationer who signed an order submitting to the probation search condition was "unambiguously" aware of it). Moreover, we believe that the language here, albeit somewhat minimal, was sufficient to constitute a clearly expressed search condition, as it specifically advised Hodges that he was waiving his "right against search and seizure." Appellant's App. at 12.

Although Hodges posits that this mere reference to the right against search and seizure did not clearly express to him exactly what constitutional protections he was giving up when consenting to the rules of probation, we agree with the State that it would make little sense to require a boilerplate reference to our federal or state constitutions in order for the search condition to be considered valid. In light of our supreme court's expansive holding in *Vanderkolk*, and its observation that "the willingness of judicial officers to grant conditional release is likely to be impaired if supervision is uncertain or difficult," 32 N.E.3d at 779, we think that the language used here was within constitutional parameters.

[17] In sum, the search of Hodges's garage did not violate Article 1, Section 11 of the Indiana Constitution. Accordingly, the trial court properly denied Hodges's motion to suppress the evidence obtained as a result of the search. We affirm the trial court's order.

[18] Affirmed.

Bailey, J., concurs.

Vaidik, C.J., concurs in result with opinion.

ATTORNEY FOR APPELLANT

Richard J. Thonert
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General

Ian McLean
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Lonny Hodges,<br><br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br><br>*Appellee-Plaintiff* | May 18, 2016<br><br>Court of Appeals Case No.<br>43A03-1507-CR-843<br><br>Appeal from the Kosciusko Circuit Court<br><br>The Honorable Michael Reed<br><br>Trial Court Cause No.<br>43C01-1403-FC-176 |

**Vaidik, Chief Judge, concurring in result.**

[19]    I agree with the result reached by the majority, but I do not agree that *State v. Vanderkolk*, 32 N.E.3d 775 (Ind. 2015), bars *all* probationers who are subject to search conditions from raising lack-of-reasonable-suspicion challenges to probation searches. I do not believe that is what our Supreme Court held in *Vanderkolk*, and extending *Vanderkolk* to apply to all probationers is inconsistent

with United States Supreme Court precedent. However, because reasonable suspicion existed to search Hodges' garage, I respectfully concur in result.

[20] In *Vanderkolk*, the Court addressed a search of the residence of an offender "who was on home detention under Community Corrections supervision[.]" 32 N.E.3d at 775. The opinion did not state whether the offender had been directly placed in a community-corrections program, *see* Ind. Code §§ 35-38-2.6-3 and -4.5, or instead was on probation and was simply being supervised by a community-corrections program, *see* Ind. Code §§ 35-38-2.5-5. Rather, the Court made clear that the precise legal basis for the placement was irrelevant and that the critical fact was that the offender was on home detention:

> *For purposes of today's analysis*, "probation" is not distinguishable from "community corrections," and the terms will be used interchangeably. A trial court has the authority to place a convicted offender "in *home detention* under IC 35-38-2.5 instead of commitment to the department of correction." Ind. Code § 35-38-1-21(b) (2012). *Home detention* may be imposed as either a condition of probation or as an alternative placement that is part of an offender's community corrections program. *See* Ind. Code § 35-38-2.5-5 (2012) *and* Ind. Code § 35-38-2.6-4.5 (2012). "Both probation and community corrections programs serve as alternatives to commitment to the Department of Correction and both are made at the sole discretion of the trial court." *Cox v. State*, 706 N.E.2d 547, 549 (Ind. 1999). Placement under either probation or a community corrections program is "a matter of grace and a conditional liberty that is a favor, not a right." *Id.* (internal quotations and citations omitted). The similarities between the two programs have led to common treatment in appellate review of a trial court's decision to revoke either, but our Court noted in *Cox* that "there may be other matters related to community corrections and probation which the law will not

treat in the same way." *Id.* at 549 n.6. *The present case does not call for differing treatment.* Although conditions of probation and other rules governing the process of probation are listed under Indiana Code [chapter] 35-38-2 *et seq.* and rules governing the direct placement in a community corrections program are governed by Indiana Code [chapter] 35-38-2.6 *et seq.*, *home detention* under either is not necessarily different in its purpose or execution. The difference rather relates to the administration and costs of the program. *See* Ind. Code § 35-38-2.5-5(c) ("The court may order supervision of an offender's *home detention* to be provided by the probation department for the court or by a community corrections program that provides supervision of *home detention*.") *and* Ind. Code § 35-38-2.5-5.5(d) ("A probation department or community corrections program that supervises an offender on *home detention* is responsible for the expenses of the supervision.").

*Vanderkolk*, 32 N.E.3d at 776-77 (emphases added).

[21] Here, the majority relies on a later passage from *Vanderkolk*, in which the Court did not specifically mention the home-detention aspect of the case:

> We therefore hold that Indiana probationers and community corrections participants, who have consented or been clearly informed that the conditions of their probation or community corrections program unambiguously authorize warrantless and suspicionless searches, may thereafter be subject to such searches during the period of their probationary or community corrections status.

*Id.* at 779. However, it is my opinion that the Court's introductory home-detention discussion, quoted above, served to limit its holding to searches of probationers (and community-corrections participants) *who have been placed on*

*home detention.* If that was not the Court's intention, then the in-depth discussion of home detention was pointless.

[22] This limited reading of *Vanderkolk* is consistent with the United States Supreme Court's decisions in this area. In 1987, the Court described probation's place on the "continuum" of sentencing options:

> Probation is simply one point (or, more accurately, one set of points) on a continuum of possible punishments ranging from solitary confinement in a maximum-security facility to a few hours of mandatory community service. A number of different options lie between those extremes, including confinement in a medium- or minimum-security facility, work-release programs, "halfway houses," and probation—which can itself be more or less confining depending upon the number and severity of restrictions imposed.

*Griffin v. Wisconsin*, 483 U.S. 868, 874 (1987). In *Griffin*, the Court upheld a search that was conducted pursuant to a state regulation that permitted "any probation officer to search a probationer's home without a warrant as long as his supervisor approves *and as long as there are 'reasonable grounds' to believe the presence of contraband*[.]" *Id.* at 870 (emphasis added).

[23] Fourteen years after *Griffin*, in *United States v. Knights*, the Court addressed the search of the apartment of an offender whose conditions of probation purported to allow searches "with or without . . . reasonable cause" (i.e., suspicionless searches). 534 U.S. 112, 114 (2001). In upholding the search in question, the Court looked at the totality of the circumstances, treating the seemingly limitless probation search condition as merely one "salient circumstance." *Id.*

at 118.  The Court did not say that the search condition, standing alone, was conclusive.  To the contrary, notwithstanding the fact that the search condition specifically provided for suspicionless searches, the Court expressly based its holding on the fact that the officer *had* reasonable suspicion.  *Id.* at 122 ("We therefore hold that the warrantless search of Knights, supported by reasonable suspicion and authorized by a condition of probation, was reasonable within the meaning of the Fourth Amendment.").

[24]  It is true that the Court most recently held that parolees in California, who are subject to suspicionless searches pursuant to state statute, cannot challenge parole searches based on lack of reasonable suspicion.  *Samson v. California*, 547 U.S. 843 (2006).  In doing so, however, the Court made a point to distinguish between parolees and probationers:

> As we noted in *Knights*, parolees are on the "continuum" of state-imposed punishments.  *On this continuum, parolees have fewer expectations of privacy than probationers, because parole is more akin to imprisonment than probation is to imprisonment.*  As this Court has pointed out, parole is an established variation on imprisonment of convicted criminals.  The essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence.  In most cases, the State is willing to extend parole only because it is able to condition it upon compliance with certain requirements.  *See also United States v. Reyes*, 283 F.3d 446, 461 (C.A.2 2002) ("[F]ederal supervised release, *in contrast to probation*, is meted out in addition to, not in lieu of, incarceration"); *United States v. Cardona*, 903 F.2d 60, 63 (C.A.1 1990) ("[O]n the Court's continuum of possible punishments,

parole is the stronger medicine; ergo, *parolees enjoy even less of the average citizen's absolute liberty than do probationers*").

*Id.* at 850 (emphasis added, citations omitted, formatting altered).

[25] In *Vanderkolk*, our Supreme Court extended *Samson* to Indiana probationers (and community-corrections participants) who have been placed on home detention. Here, the majority understood *Vanderkolk* to take a much more significant step and extend *Samson* to *all* probationers. I do not believe *Vanderkolk* extends so far.

[26] Applying *Samson* to probationers on home detention made sense, since a probationer on home detention is just as restricted as some parolees, and even *more* restricted than other parolees. An offender who is on home detention is in many ways a prisoner, and a search of his property is much like a search of a prison cell. But as the United States Supreme Court recognized in *Griffin*, there are different levels of probation that constitute different points on the continuum between solitary confinement in a maximum-security prison and a few hours of community service. 483 U.S. at 874. Probation can be "more or less confining depending upon the number and severity of restrictions imposed." *Id.*

[27] Extending *Vanderkolk* to all probationers would render these differences meaningless. A first-time offender on unsupervised probation for Class C misdemeanor driving without a license could be subjected to suspicionless

searches[7] just the same as a person on intensive, home-detention probation following a lengthy prison term for armed robbery. The United States Supreme Court did not sanction such a result in *Samson*, the Indiana Supreme Court did not sanction such a result in *Vanderkolk*, and this Court should not sanction such a result here.

[28] Instead, we should simply affirm the trial court's well-reasoned conclusion that the search of Hodges' garage was justified by a reasonable suspicion that Hodges was engaged in criminal activity. Hodges was not on home detention like the offender in *Vanderkolk*, nor was he on some other form of highly restrictive probation. He was on standard probation for a non-violent, non-drug-related crime. Therefore, I would hold that (1) Hodges could be subjected to a probation search only upon reasonable suspicion of criminal activity and (2) reasonable suspicion existed in this case.

---

[7] Upon questioning at oral argument in this case, the deputy attorney general also read *Vanderkolk* to extend to all probationers, including those on unsupervised probation.