## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 21 2018, 9:04 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Samuel J. Beasley
Muncie, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ian McLean
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Nakya M. Ramseyer, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | March 21, 2018 <br><br> Court of Appeals Case No. <br> 05A02-1709-CR-2189 <br><br> Appeal from the Blackford Superior Court <br><br> The Honorable J. Nicholas Barry, Judge <br><br> Trial Court Cause No. <br> 05D01-1705-CM-126 |

**Crone, Judge.**

# Case Summary

[1] While on probation for another crime, Nakya M. Ramseyer was charged with class A misdemeanor possession of a schedule IV controlled substance. The evidence supporting the charge was discovered during a warrantless search of her residence. In combined proceedings, the trial court convicted Ramseyer as charged and revoked her probation. Ramseyer appeals her conviction, claiming that the trial improperly admitted evidence obtained during an allegedly unlawful search of her residence, in violation of her constitutional rights. We affirm.

# Facts and Procedural History

[2] In December 2016, Nakya Ramseyer was on supervised probation through Blackford County Community Corrections in case number 05D01-1607-CM-259 ("Case 259"). As a condition of probation, she agreed to subject herself to searches of her person, property, or residence with or without probable cause, suspicion, or a search warrant. Additionally, her probation agreement prohibited her from possessing illegal drugs and from having direct or indirect contact with any person on parole or probation. Community corrections case manager Kelly Cale explained the conditions of the probation agreement to Ramseyer, and Ramseyer acknowledged that she understood them and signed the agreement.

[3] In May 2017, when Ramseyer was placed on day reporting, she again met with Cale, who explained the terms of the day reporting agreement. The agreement

included a nearly identical provision concerning searches, as well as the same prohibitions against illegal drug use and contact with other probationers and parolees. State's Ex. 2. Again, Cale reviewed the rules with Ramseyer, specifically instructing her not to associate with her boyfriend Kurt Reichard, a parolee. Acknowledging that she understood and would comply with the rules, Ramseyer signed the agreement.

[4] Later that month, Blackford County Sheriff's Deputy James Robbins received a report of a domestic disturbance at a Montpelier residence. When he and Montpelier Police Officer Al Johnson arrived on the scene, they heard a man shouting and saw Reichard exit a stairwell door. Deputy Robbins attempted to engage Reichard in conversation, but Reichard yelled, cursed, swung his arms, and reached inside his pocket. When the deputy ordered him to remove his hand from his pocket, Reichard initially turned away and then began to scuffle with the deputy. Deputy Robbins arrested Reichard for resisting law enforcement and patted him down, discovering a syringe and a spoon-like utensil. Reichard's behavior led the deputy to believe that Reichard was under the influence of drugs at the time.

[5] Meanwhile, Ramseyer stood nearby, shouting. The officers handcuffed and Mirandized her, and she admitted that she and Reichard had used methamphetamine ("meth") two days earlier. Having recognized Ramseyer's name from the current probationer's list, Deputy Robbins contacted community corrections and explained the situation to Cale. The two agreed that Ramseyer's residence should be searched. The officers waited for Cale to arrive

at the residence before they began the search. When Cale arrived, she tried to calm the visibly upset Ramseyer while the law enforcement officers searched the residence. The search produced a crusty spoon, a mirror with a white powdery residue, Alprazolam pills, three packages of rolling papers, and baggies. Ramseyer later told officers that she had used the spoon to take meth and that the meth had been purchased in the baggies.

[6] The State charged Ramseyer with class A misdemeanor possession of a schedule IV controlled substance and filed a petition to revoke her probation in Case 259. Ramseyer moved to suppress the evidence obtained during the search of her residence, claiming a violation of her protections against unlawful search and seizure under the United States and Indiana Constitutions. The trial court denied her suppression motion and held combined proceedings on the misdemeanor possession charge and the revocation petition. Ramseyer objected to the admission of the evidence on the same basis at trial. The court convicted her as charged and sentenced her to 365 days suspended to probation. The court also found that she violated her probation in Case 259 and revoked it, ordering the execution of her remaining sentence. Ramseyer appeals her conviction. Additional facts will be provided as necessary.

## Discussion and Decision

[7] Ramseyer contends that the trial court improperly admitted evidence obtained from the search of her residence, which she characterizes as an unlawful search and seizure in violation of the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution. We review

a trial court's decision to admit or exclude evidence using an abuse of discretion standard. *Collins v. State*, 966 N.E.2d 96, 104 (Ind. Ct. App. 2012). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it or where the trial court misinterprets the law. *Id.* In conducting our review, we do not reweigh evidence. *Robinson v. State*, 5 N.E.3d 362, 365 (Ind. 2014). Where the issue concerns the constitutionality of a search or seizure, the ultimate determination is a question of law to be reviewed de novo. *Carpenter v. State*, 18 N.E.3d 998, 1001 (Ind. 2014).

[8] As a preliminary matter, we note that Ramseyer has failed to develop a cogent argument concerning her claim under the Indiana Constitution, as required by Indiana Appellate Rule 46(A)(8). Thus, she has waived it for our consideration. *Nur v. State*, 869 N.E.2d 472, 482 (Ind. Ct. App. 2007), *trans. denied* (2008). As such, we limit our analysis to her claim of unreasonable search and seizure under the Fourth Amendment to the United States Constitution, which states, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." The Fourth Amendment's fundamental purpose is "to protect the legitimate expectations of privacy that citizens possess in their person, their homes, and their belongings." *State v.*

*Terrell*, 40 N.E.3d 501, 505 (Ind. Ct. App. 2015) (quoting *Montgomery v. State*, 904 N.E.2d 374, 377-78 (Ind. Ct. App. 2009), *trans. denied*).

[9] Significantly, here, Ramseyer was on supervised probation in Case 259 when her residence was searched. In *State v. Schlechty*, our supreme court recognized that "a warrantless search may be justified on the basis of reasonable suspicion to believe that the probationer has engaged in criminal activity and that a search condition is one of the terms of probation." 926 N.E.2d 1, 6 (Ind. 2010) (citing *United States v. Knights*, 534 U.S. 112, 122 (2001)). In *State v. Vanderkolk*, the court went a step further, holding that

> Indiana probationers and community corrections participants, who have consented or been clearly informed that the conditions of their probation or community corrections program unambiguously authorize warrantless *and suspicionless searches*, may thereafter be subject to such searches during the period of their probationary or community corrections status.

32 N.E.3d 775, 779 (Ind. 2015) (emphasis added). "The *Vanderkolk* court did not specify what a valid search condition must look like under the Fourth Amendment … but merely stated that Indiana probationers must be 'unambiguously informed of a clearly expressed search condition in the conditions of their release to probation.'" *Hodges v. State*, 54 N.E.3d 1055, 1060 (Ind. Ct. App. 2016).

[10] Ramseyer signed an agreement, acknowledging that she had read and understood the rules of probation, which include the following provision with respect to searches: "You are subject to searches of your person, property and

place of residence by your probation officer, community corrections officer or law enforcement officer without probable cause, any suspicion or a search warrant." State's Ex. 1. Five months later, when she was placed on day reporting, she signed an agreement acknowledging that she understood and agreed to comply with the rules and guidelines for the day reporting program, which include a nearly identical provision: "I am subject to searches of my person, property and place of residence by my probation officer, community corrections officer or law enforcement officer without probable cause, and suspicion or a search warrant." State's Ex. 2. In both instances, case manager Cale went over the rules with Ramseyer to ensure that she understood what she was about to sign, and in each case Ramseyer's signature indicated her acknowledgment that she understood and agreed to comply with the terms/rules.

[11]     Simply put, Ramseyer was clearly informed about and consented to the search provisions found in both documents, and as such, her circumstances fall squarely within *Vanderkolk*. Her attempt to parse the terms "probation" and "investigatory" when it comes to searches of a probationer's property is unpersuasive.[1] Accordingly, we affirm.

---

[1] Similarly, Ramseyer's hairsplitting argument concerning *which* authority actually conducted the search of her property is not well taken. First, the terms/rules of both agreements specify that searches may be conducted by Ramseyer's probation officer, community corrections officer, or other law enforcement. Second, Ramseyer's community corrections case manager actually agreed to and was present at the residence during the law enforcement officers' search.

[12]    Affirmed.

Robb, J., and Bradford, J., concur.