## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 06 2019, 9:27 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kyle E. Cray
Bennet Boehning & Clary, LLP
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Cory Smith,

*Appellant-Defendant*,

v.

State of Indiana,

*Appellee-Plaintiff*.

December 6, 2019

Court of Appeals Case No.
19A-CR-407

Appeal from the Tippecanoe
Circuit Court

The Honorable Sean M. Persin,
Judge

Trial Court Cause No.
79C01-1710-F2-19

**Brown, Judge.**

[1] Cory Smith appeals his convictions for dealing methamphetamine, unlawful possession of a syringe, possession of paraphernalia, and maintaining a common nuisance and the finding that he is an habitual offender. We affirm.

## *Facts and Procedural History*

[2] Smith signed several instruments in connection with his placement on home detention through Tippecanoe County Community Corrections including a document dated July 18, 2017, which provided in part:

### COMMUNITY CORRECTION POLICY CONCERNING SEARCH AND SEIZURES

Waiver of Fourth Amendment Rights

<u>CAUTION</u>: **The following document is legally binding**. **Read and understand it before signing**.

In consideration of the opportunity to participate in a Community Corrections program rather than serve my sentence through the Department of Correction or other secure or more restrictive environment, I acknowledge and agree that I hereby waive my rights concerning searches and seizures under the Fourth and Fourteenth Amendments of the United States Constitution and under Article 1, § 11 of the Indiana Constitution. Specifically, I hereby consent to allow employees of Community Correction or law enforcement officers to search my person or property without a warrant and without probable cause.

I agree that such a search is permissible during day or night and includes, without limitation, entrance into or searches of my residence, my telephone, any computing device of mine, secure containers and vehicles. Such searches may take place in my presence or outside of my presence and with or without prior notice to me.

\* \* \* \* \*

> I further understand and agree that any evidence found as a result of such a search of my person or property may be used as evidence against me in a disciplinary hearing, court of law, or otherwise.

State's Exhibit 1. Smith signed another instrument dated August 25, 2017, providing in part:

**Consent to Search**

\* \* \* \* \*

> **Agreement**: The undersigned owner(s)/leaseholder(s) hereby authorize law enforcement officers of the Tippecanoe County Sheriff's Department, Lafayette Police Department, West Lafayette Police Department, Purdue University Police Department, Tippecanoe County Probation Department, and Tippecanoe County Community Corrections to search my house, apartment, premises, business, vehicle and/or any contents therein.

> The undersigned has been advised that he or she is not required to execute this consent and that any property found at such house, apartment, premises, business, or vehicle may be used against me in a criminal prosecution. Being so advised, I hereby waive any and all objections that may be made by me to said search. I further declare that this waiver is freely and voluntarily given of my own free will and accord and is a standing waiver so long as Participant is an active program participant of Tippecanoe County Community Corrections.

*Id*.

[3] On October 14, 2017, Adam Sowders, a community corrections surveillance officer, was notified by home detention coordinator Josh Cole "that a WeTip information come [sic] in," and Cole requested that Sowders search Smith's residence. Transcript Volume 2 at 120. Officer Sowders was made aware that there was possible drug use or drugs at the residence. He reviewed Smith's file

and confirmed that it contained Smith's signed consent to search. Wearing his uniform, Officer Sowders went to Smith's residence with two other community corrections officers, including Officer Clint Delp, who made initial contact. Officer Sowders asked if there was anything in the residence that was going to get Smith in trouble with the home detention rules and conditions. Smith stood up and walked toward a bedroom, and Officer Sowders followed him. Smith started to reach for a drawer of a nightstand, Officer Sowders stopped him for safety considerations and asked what he was reaching for in the drawer, and Smith stated "a spoon." *Id*. at 126. Smith indicated that he had used illegal drugs a few hours earlier, that he had used a needle, and that the needle was in his pocket or somewhere in the residence.

[4] After Smith's admissions, Officer Sowders placed him in restraints and found a spoon with residue on it in the nightstand drawer. Officer Sowders checked the bedroom and closets and found a backpack containing drug paraphernalia which included "[a] whizzinator touch, baggies of illegal drugs and syringes." *Id*. at 144. Given the amount of paraphernalia, Sowders contacted the Lafayette Police Department, and Lafayette Police Officer Brian Landis and another officer responded to the scene. Police discovered plastic baggies, a digital scale, syringes, rubber bands or tourniquets, cooking tins, cotton balls with residue on them, and a significant amount of methamphetamine in the residence and $666 in cash on Smith. As he walked Smith out of the building, Officer Landis commented "it was fairly shocking, having done this for nearly sixteen years to be on a pretty significant drug seizure with somebody who was

currently on a house arrest program where they had their fourth amendment waiver and then it was fairly surprising to me that he had put himself in that situation," and Smith stated he "had no choice" after he recently lost his job and had to pay rent and this was "the easiest way to do it." *Id*. at 88-89, 157.

[5] The State charged Smith with: Count I, dealing in methamphetamine as a level 2 felony; Count II, possession of methamphetamine as a level 3 felony; Count III, possession of a narcotic drug as a level 5 felony; Count IV, unlawful possession of a syringe as a level 6 felony; Count V, possession of paraphernalia as a class C misdemeanor; Count VI, maintaining a common nuisance as a level 6 felony; and Count VII, conspiracy to deal in methamphetamine as a level 2 felony. It also alleged Smith was an habitual offender. Smith filed a motion to suppress statements he made to Officer Landis. The court granted the motion except as to Smith's voluntary statement that he "had no choice; he recently quit his job; he needed money; and this was the easiest way for him to make money," and it found this statement was not made as a result of a custodial interrogation. Appellant's Appendix Volume 2 at 96. Smith also filed a motion to suppress the evidence obtained during the search. In denying the motion, the court noted that it had watched the recording from Officer Sowders's body camera and stated "I remember being impressed with Mr. Sowders['s] demeanor. Just the way that he handled himself the entire time," "[t]here are times when there is just this law enforcement presence that's so abrasive and it almost gives you the impression, hey they're going to come in and do whatever they want anyhow," and "[h]e was polite, he was respectful,

he—you know he said hey anything going on here, that's going to get you in trouble and you know my take is that you had an option at that point." Transcript Volume 2 at 139. The court found "I think that once the state had evidence of the spoon, the drug paraphernalia, the residue on the spoon, looking for a needle . . . I think it goes well beyond reasonable suspicion." *Id.* at 140. Following a bench trial, the court entered convictions on Counts I, IV, V and VI and found Smith was an habitual offender. It sentenced him to ten years on Count I, one year on Count IV, sixty days on Count V, and one year on Count VI, all to be served concurrently, and enhanced the sentence under Count I by six years for being an habitual offender.

## *Discussion*

## I.

[6] Smith claims the trial court improperly admitted evidence obtained from the search of his residence and argues the search was unlawful under the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution. We review a trial court's decision to admit or exclude evidence using an abuse of discretion standard. *Collins v. State*, 966 N.E.2d 96, 104 (Ind. Ct. App. 2012). Where the issue concerns the constitutionality of a search or seizure, the ultimate determination is a question of law to be reviewed de novo. *Carpenter v. State*, 18 N.E.3d 998, 1001 (Ind. 2014).

[7] Smith was on home detention through community corrections when his residence was searched. In *State v. Vanderkolk*, the Indiana Supreme Court

observed that home detention may be imposed as either a condition of probation or as an alternative placement that is part of an offender's community corrections program, and that both probation and community corrections programs serve as alternatives to commitment to the Department of Correction and both are made at the sole discretion of the trial court. 32 N.E.3d 775, 777 (Ind. 2015). The Court noted that, in *Samson v. California*, 547 U.S. 843, 126 S. Ct. 2193 (2006), the United States Supreme Court permitted a suspicionless search where a parolee had agreed to a parole search condition authorizing searches "with or without a search warrant and with or without cause." *Vanderkolk*, 32 N.E.3d at 777 (citing *Samson*, 547 U.S. at 846, 126 S. Ct. at 2196). The *Vanderkolk* Court held:

> Indiana probationers and community corrections participants, who have consented or been clearly informed that the conditions of their probation or community corrections program unambiguously authorize warrantless and suspicionless searches, may thereafter be subject to such searches during the period of their probationary or community corrections status. . . .
>
> A probationer or community corrections participant may, pursuant to a valid search condition or advance consent, authorize a warrantless premises search without reasonable suspicion.

*Id*. at 779-780. The Court did not specify what a valid search condition must look like under the Fourth Amendment or the Indiana Constitution, but merely stated that probationers or community corrections participants must be "unambiguously informed of a clearly expressed search condition in the conditions of release to probation or community corrections." *Id*. at 779 (Ind. 2015). *See Hodges v. State*, 54 N.E.3d 1055, 1060 (Ind. Ct. App. 2016)

(observing the *Vanderkolk* Court did not specify what a valid search condition must look like under the Fourth Amendment or the Indiana Constitution).[1]

[8] Here, Smith signed a Waiver of Fourth Amendment Rights consenting to a search of his person and property by community corrections or law enforcement without a warrant and without probable cause. Moreover, he executed a document titled "Consent to Search" from Tippecanoe County Community Corrections in which he specifically provided that he "authorize[d] law enforcement officers of the . . . Lafayette Police Department . . . and Tippecanoe County Community Corrections to search [his] house, apartment, [and] premises . . . and/or any contents therein" and that he "waive[d] *any and all objections* that may be made by me to said search." State's Exhibit 1 (emphasis added). In light of Smith's consent and *Vanderkolk*, we conclude the search did not violate the Fourth Amendment or Article 1, Section 11. *See Hodges*, 54 N.E.3d at 1061 (search pursuant to consent providing "[y]ou waive your right against search and seizure" and law enforcement may "search your person, residence" was sufficient to constitute a clearly expressed search condition).[2]

---

[1] In *Hodges*, this Court noted: "The *Vanderkolk* court did imply that the waiver stating 'I agree and specifically waive any and all rights as to search and seizure under the laws and constitutions of both the United States and the State of Indiana' would have been valid had it not been 'fatally compromised' by the waiver's closing statement conditioning any such searches upon the existence of probable cause. 32 N.E.3d at 778." *Hodges*, 54 N.E.3d at 1060 n.6.

[2] In *Hodges*, we held that, while we generally interpret and apply Article 1, Section 11 independently from the Fourth Amendment and consider the factors in *Litchfield v. State*, 824 N.E.2d 356 (Ind. 2005), in light of *Vanderkolk*'s expansive endorsement of warrantless and suspicionless searches, a separate *Litchfield* analysis is

[9] Smith further claims that his statements to Officer Sowders should have been suppressed because he was in custody and had not been advised of his *Miranda* rights and that his statement to Officer Landis admitted into evidence was not voluntary. The Fifth Amendment provides that no person shall be compelled in any criminal case to be a witness against himself. *Brabandt v. State*, 797 N.E.2d 855, 861 (Ind. Ct. App. 2003). In order to protect the privilege against self-incrimination, the United States Supreme Court held that incriminating statements made while a defendant is in custody and subject to interrogation may not be admitted unless the defendant waives his Fifth Amendment privilege. *Id.* (citing *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602 (1966)). Law enforcement officers are not required to give a defendant *Miranda* warnings unless the defendant is both in custody and subject to interrogation in connection with the investigation of a crime. *Id.* We conclude that, under the facts of this case, Smith was not in custody for purposes of *Miranda* when he stated that he had used drugs earlier in the day. Further, the record supports the trial court's determination that Smith's statements that he "had no choice" because he had recently lost his job and "that was the easiest way to do it" were made voluntarily and not as a result of a custodial interrogation. *See* Transcript Volume 2 at 157. The challenged statements were not taken in violation of

---

not required. *See Hodges*, 54 N.E.3d at 1060. Also, Smith cites *Jarman v. State*, which found that a consent to a search "without a warrant and without probable cause" did not unambiguously authorize a search with no suspicion at all. 114 N.E.3d 911, 912 (Ind. Ct. App. 2018), *trans. denied*. Here, in addition to the Waiver of Fourth Amendment Rights, Smith executed the Consent to Search in which he waived "any and all objections" to a search. State's Exhibit 1. *Jarman* does not require reversal.

*Miranda*. Moreover, in light of the nature and quantity of drug paraphernalia and drugs discovered in Smith's residence, any error in admitting the challenged statements was harmless. *See Kelley v. State*, 825 N.E.2d 420, 428-429 (Ind. Ct. App. 2005) (holding that, even if the defendant's admission to drug dealing involvement was admitted in violation of *Miranda*, the error was harmless beyond a reasonable doubt).

## II.

[10] Smith next claims the evidence does not support the finding that he is an habitual offender. He argues that the links between the booking documentation and the records of conviction are too tenuous to support the habitual offender finding. The State argues that the admitted exhibits included identification in the form of court records, photographs, motor vehicle records, and social security information which together support the habitual offender finding.

[11] Upon a challenge to the sufficiency of the evidence for an habitual offender determination, the appellate court neither reweighs the evidence nor judges the credibility of the witnesses; rather, we examine only the evidence most favorable to the judgment, together with all of the reasonable and logical inferences to be drawn therefrom. *Woods v. State*, 939 N.E.2d 676, 677 (Ind. Ct. App. 2010), *trans. denied*. The habitual offender determination will be sustained on appeal so long as there is substantial evidence of probative value supporting the judgment. *Id*. Ind. Code § 35-50-2-8 provides in part that a person convicted of a level 1 through level 4 felony is a habitual offender if the State

proves beyond a reasonable doubt that: (1) the person has been convicted of two prior unrelated felonies; and (2) at least one of the prior unrelated felonies is not a level 6 felony or a class D felony.

[12] State's Exhibit 40 contained documentation related to a level 6 felony conviction. State's Exhibit 41 contained documentation related to a class B felony conviction. State's Exhibits 37 through 39 included Smith's BMV records and jail records. The trial court found the photographs, name, date of birth, and social security information where available was the same throughout the documents and that the driver's license number was reflected on documents for both prior causes. We conclude the State presented evidence of probative value from which the trier of fact could have found Smith was an habitual offender.

[13] For the foregoing reasons, we affirm.

[14] Affirmed.

Altice, J., and Tavitas, J., concur.