ATTORNEYS FOR APPELLANT
Gregory F. Zoeller
Attorney General of Indiana
Indianapolis, Indiana

Ian A.T. McLean
Stephen R. Creason
Deputy Attorneys General
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Bruce W. Graham
Graham Law Firm P.C.
Lafayette, Indiana

_____

## In the
## Indiana Supreme Court

**FILED**
Jun 09 2015, 2:11 pm

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

_____

No. 79S04-1411-CR-718

STATE OF INDIANA,                                    *Appellant (Defendant)*,

v.

BRISHEN R. VANDERKOLK,                         *Appellee (Plaintiff)*.

_____

Appeal from the Tippecanoe Superior Court, No. 79D04-1301-FD-6
The Honorable Gregory J. Donat, Judge
_____

On Transfer from the Indiana Court of Appeals, No. 79A04-1308-CR-407
_____

**June 9, 2015**

**Dickson, Justice**.

A probationer or community corrections participant may, by a valid advance consent or search term in the conditions of release, authorize a warrantless search of his or her premises without reasonable suspicion. Because the search term in this case informed the participant that he was consenting only to searches made upon probable cause, we reverse the partial denial of the defendant's motion to suppress.

In December 2012, defendant Brishen Vanderkolk was living in the residence of Jordan Sullivan (who was on home detention under Community Corrections supervision in Tippecanoe County) when community corrections officers went to the Sullivan residence to conduct a routine warrantless search to assure Sullivan's compliance with the conditions of the program.  As the search began, the officers had no suspicion of illegal activity.  But after entering the residence, the ensuing search uncovered illegal drugs and a drug smoking device in the common areas shared by the defendant and Sullivan as well as drugs and drug paraphernalia in the private bedrooms of both the defendant and Sullivan.  The defendant was charged with Maintaining a Common Nuisance as a Class D felony; Dealing in Marijuana as a Class A misdemeanor; Possession of Marijuana as a Class A misdemeanor; and Possession of Paraphernalia as a Class A misdemeanor.  The defendant filed a motion to suppress all of the evidence, arguing that it stemmed from an improper search in violation of the Search and Seizure Clauses of the Indiana and United States Constitutions.  The trial court granted the motion in part, finding "that the Community Corrections officers had consent to search the residence of Jordan Sullivan and such common areas as were available to him" and thus denying suppression of items found in such areas but suppressing "items found and/or seized in the private bedroom of [the defendant]."  Appellant's App'x at 61.

The State appealed,[1] relying primarily on <u>Samson v. California</u>, 547 U.S. 843, 126 S. Ct. 2193, 165 L. Ed. 2d 250 (2006), and urges that the challenged search by the officers was authorized under the Fourth Amendment to the United States Constitution (a) because of Sullivan's community corrections status and/or (b) because of Sullivan's consent. The State argues that once lawfully inside, the search of the defendant's private bedroom was part of a reasonable protective sweep.  Finally, the State argues that the conduct of

---

[1] Notwithstanding the continuation of the case in the trial court, this is not an interlocutory appeal but one in which the judgment "is otherwise deemed final by law."  Ind. Appellate Rule 2(H)(5).  The State is authorized by statute to appeal "[f]rom an order granting a motion to suppress, if the ultimate effect of the order is to preclude further prosecution."  Ind. Code § 35-38-4-2(5) (2012) (recently amended to authorize the State to appeal "[f]rom an order granting a motion to suppress evidence, if the ultimate effect of the order is to preclude further prosecution *of one (1) or more counts of an information or indictment*" by S.E.A. 261 § 2, 119th Gen. Assem., 1st Reg. Sess. (Ind. 2015); P.L. 110–2015 § 2 (effective July 1, 2015) (new language in italics)).  While application of these provisions may be tenuous in this case, the defendant does not challenge the State's right to appeal.

the officers throughout the entire entry and search of the residence was reasonable under the Indiana Constitution. The defendant responds that a probation or community corrections home detention participant is entitled to Fourth Amendment protection that requires corrections officers to have accompanying reasonable suspicion of either criminal activity or a violation of probationary terms in order to conduct a compliance search and that a participant may not dispense of this right even by signing a valid waiver. He argues that Samson is specifically limited in application only to parolees and that State v. Schlechty, 926 N.E.2d 1 (Ind. 2010) requires that reasonable suspicion must accompany a search of a probationer's residence under all circumstances. The Court of Appeals affirmed the trial court. State v. Vanderkolk, 10 N.E.3d 585, 591 (Ind. Ct. App. 2014).

For purposes of today's analysis, "probation" is not distinguishable from "community corrections," and the terms will be used interchangeably. A trial court has the authority to place a convicted offender "in home detention under IC 35-38-2.5 instead of commitment to the department of correction." Ind. Code § 35-38-1-21(b) (2012). Home detention may be imposed as either a condition of probation or as an alternative placement that is part of an offender's community corrections program. *See* Ind. Code § 35-38-2.5-5 (2012)[2] *and* Ind. Code § 35-38-2.6-4.5 (2012). "Both probation and community corrections programs serve as alternatives to commitment to the Department of Correction and both are made at the sole discretion of the trial court." Cox v. State, 706 N.E.2d 547, 549 (Ind. 1999). Placement under either probation or a community corrections program is "a matter of grace and a conditional liberty that is a favor, not a right." *Id*. (internal quotations and citations omitted). The similarities between the two programs have led to common treatment in appellate review of a trial court's decision to revoke either, but our Court noted in Cox that "there may be other matters related to community corrections and probation which the law will not treat in the same way." *Id*. at 549 n.6. The present case does not call for differing treatment. Although conditions of probation and other rules governing the

---

[2] We note that there have been two legislative changes amending this statute since the trial court heard this case. In both instances, the statutory changes have no bearing on the resolution of this case, as the changes affect the computation of credit time and the language to be employed when computing credit time for home detention served. *See* Ind. Code § 35-38-2.5-5 (Supp. 2014) (effective July 1, 2014) *and* S.E.A. 175 § 22, 119th Gen. Assem., 1st Reg. Sess. (Ind. 2015); P.L. 74–2015 § 22; I.C. § 35-38-2.5-5 (effective July 1, 2015).

process of probation are listed under Indiana Code section 35-38-2 *et. seq.* and rules governing the direct placement in a community corrections program are governed by Indiana Code section 35-38-2.6 *et. seq.*, home detention under either is not necessarily different in its purpose or execution. The difference rather relates to the administration and costs of the program. *See* Ind. Code § 35-38-2.5-5(c) ("The court may order supervision of an offender's home detention to be provided by the probation department for the court or by a community corrections program that provides supervision of home detention.") *and* Ind. Code § 35-38-2.5-5.5(d) ("A probation department or community corrections program that supervises an offender on home detention is responsible for the expenses of the supervision.").

### 1. Community Corrections Status and Warrantless Searches

The State first contends that the challenged search was authorized due to Sullivan's community corrections status. Asserting that <u>Samson</u> is controlling, the State contends that Sullivan's status as a home detention participant alone authorized the corrections officers' presence in the residence (irrespective of reasonable suspicion) and that a protective sweep of the residence and the plain view of illegal drugs and paraphernalia once inside the residence combined to allow for the search and seizure of items in the common areas and in the defendant's private bedroom.

In <u>Samson</u>, the United States Supreme Court permitted a suspicionless search where a parolee had agreed to a parole search condition authorizing searches "with or without a search warrant and with or without cause." 547 U.S. at 846, 126 S. Ct. at 2196, 165 L. Ed. 2d at 255. While <u>Samson</u> dispenses with the need for reasonable suspicion where there exists a valid parole search condition permitting such searches, it does not authorize suspicionless searches based on a parolee's status alone.

We reject the State's contention that Sullivan's status as a community corrections participant, standing alone, operated to authorize the warrantless and suspicionless compliance search of the Sullivan home by community corrections officers.

4

## 2. Warrantless Search as Authorized by Consent

The State alternatively argues that the search of the home was authorized because Sullivan had waived his Fourth Amendment rights and consented in advance to the search of his residence by signing his community corrections home detention participant handbook. Sullivan was required to sign the conditions that concluded with the following language:

> I have been advised of my rights and understand that any Community Corrections staff, Law Enforcement Officer or Probation Officer may enter my residence at any time without prior notice to search upon probable cause.

Appellant's Ex. 1 at 5, Tr. at 86.

Here the State argues that the waiver agreement notified Sullivan of his rights, enabling him to consent to suspicionless searches. The State seizes upon the waiver agreement language that stated: "I agree and specifically waive any and all rights as to search and seizure under the laws and constitutions of both the United States and the State of Indiana." Appellant's Reply Br. at 4 (quoting Appellant's Ex. 1 at 5, Tr. at 86). This waiver agreement language, however, was fatally compromised by the waiver's closing statement: "I have been advised of my rights and understand that any Community Corrections staff, Law Enforcement Officer or Probation Officer may enter my residence at any time without prior notice to search *upon probable cause*." Appellant's Ex. 1 at 5, Tr. at 86 (emphasis added). This language conditioned Sullivan's search consent upon the existence of probable cause.

In determining that the warrantless search of a probationer's residence based on reasonable suspicion was reasonable in United States v. Knights, the United States Supreme Court considered that the probation order "clearly expressed the search condition" and "unambiguously informed [the defendant] of it." 534 U.S. 112, 119, 122 S. Ct. 587, 591–92, 151 L. Ed. 2d 497, 505. In the present case, the search condition was not clearly expressed and the defendant was not unambiguously informed. The defendant consented only to searches upon probable cause, not to the type of search conducted in the present case. The ensuing search and seizures were thus unlawful under the Fourth Amendment, and the resulting evidence must be suppressed. As a consequence of the unlawfulness of the officers' entry into the Sullivan home, the State's con-

5

tentions that the ensuing search was permissible as a protective sweep or executed in a reasonable manner under the Indiana Constitution are thus irrelevant.

### 3. Reasonable Suspicion as a Basis for Probation and Community Corrections Searches

The defendant contends that "[e]ven if a probationer, or . . . community corrections participant, waives Fourth Amendment rights as a condition of probation, a subsequent search must be based on reasonable suspicion." Appellee's Br. at 10. This argument urges that we limit the holding in Samson to cases involving parole and not extend it to probation or community corrections.

Four years after Samson, in a case involving probation rather than parole, this Court was confronted with a Fourth Amendment claim involving a warrantless search of a probationer's car. *See* Schlechty, 926 N.E.2d 1. We reversed the grant of the defendant's motion to suppress, finding that "a warrantless search of a probationer's property that is conducted reasonably, supported by a probation search term and reasonable suspicion of criminal activity, complies with the dictates of the Fourth Amendment." *Id*. at 2. Significantly, however, the pivotal issue in Schlechty was not whether reasonable suspicion was necessary to authorize a search pursuant to a valid search condition. Rather the question was whether the search of the probationer's car was conducted reasonably. Because reasonable suspicion was present, Schlechty did not address whether to apply to probationers the holding in Samson, which eliminates the need for reasonable suspicion for searches of parolees subject to a valid search condition. In Schlechty, we noted that reasonable suspicion existed, but we did not hold that reasonable suspicion was an essential prerequisite to a search of a probationer whose conditions of probation contained a valid search condition.

As emphasized in Samson, probation searches "are necessary to the promotion of legitimate [state] interests." 547 U.S. at 849, 126 S. Ct. at 2197, 165 L. Ed. 2d at 257. But the facts in Samson involved a parolee, not a probationer, and the Samson Court made a point of distinguishing the two. The Samson Court acknowledged that probationers, by virtue of their status alone, "do not enjoy the absolute liberty to which every citizen is entitled," 547 U.S. at 848–49, 126 S.

Ct. at 2197, 165 L. Ed. 2d at 257 (internal quotation marks omitted), and observed that, on the "continuum of possible punishments, parole is the stronger medicine; ergo, parolees enjoy even less of the average citizen's absolute liberty than do probationers."  547 U.S. at 850, 126 S. Ct. at 2198, 165 L. Ed. 2d at 258 (quoting United States v. Cardona, 903 F.2d 60, 63 (1st Cir. 1990)).

But the similarities between parole and probation (or community corrections) are far greater than the differences.  Both involve the conditional release from custody, subject to terms of compliance the violation of which can terminate release and return an individual to serve the sentence imposed.  Both serve humane and restorative objectives that support their utilization.  In both, a decision to place a defendant on such a conditional release program is predictably un-likely when the enforcement of the conditions of release is uncertain or procedurally difficult.  And despite the differences on the continuum of personal liberty, we nevertheless find that parol-ees and probationers both share equivalent understandings that their freedom from incarceration is conditional and subject to monitoring.

Because probation, like parole, involves the conditional release of a prisoner who would otherwise be subject to unrestricted searches during his or her incarceration, because neither pro-bationers nor parolees enjoy the absolute liberty to which other citizens are entitled, because pro-bation searches are necessary to the promotion of legitimate government interests, because the willingness of judicial officers to grant conditional release is likely to be impaired if supervision is uncertain or difficult, and because searches of probationers or community corrections partici-pants require that they be unambiguously informed of a clearly expressed search condition in the conditions of release to probation or community corrections, we conclude that the holding in Samson is applicable to probationers and community corrections participants.  We therefore hold that Indiana probationers and community corrections participants, who have consented or been clearly informed that the conditions of their probation or community corrections program unam-biguously authorize warrantless and suspicionless searches, may thereafter be subject to such searches during the period of their probationary or community corrections status.

7

## Conclusion

A probationer or community corrections participant may, pursuant to a valid search condition or advance consent, authorize a warrantless premises search without reasonable suspicion. Here, community corrections officers conducted a warrantless and suspicionless search of the residence of a home detention participant who had agreed to written conditions of his participation that consented only to searches upon probable cause, which was admittedly wholly lacking in this case. We find that all of the evidence seized from the compliance search, including evidence attributable to the defendant, was thus the result of an improper entry and search in violation of the Fourth Amendment. We reverse the trial court order denying in part the defendant's motion to suppress and remand with instructions to grant the motion to suppress in its entirety.

Rush, C.J., and David and Massa, JJ., concur.

Rucker, J. concurs in result.