VAIDIK, Chief Judge,
concurring in result.
[19] I agree with the result reached by the majority, but I do not agree that State v. Vanderkolk, 32 N.E.3d 775 (Ind.2015), bars all probationers who are subject to search conditions from raising lack-of-reasonable-suspicion challenges to probation searches. I do not believe that is what our Supreme Court held in Vanderkolk, and extending Vanderkolk to apply to all pro *1062 bationers is inconsistent with United States Supreme Court precedent. However, because reasonable suspicion existed to search Hodges’ garage, I respectfully concur in result.
[20] In Vanderkolk, the Court addressed a search of the residence of an offender “who was on home detention under Community Corrections supervision[.]” 32 N.E.3d at 775. The opinion did not state whether the offender had been- directly placed in a community-corrections program, see Ind.Code §§ 35-38-2.6-3 and -4.5, or instead was on probation and was simply being supervised by a community-corrections program, see Ind.Code §§ 35-38-2.5-5. Rather, the Court made clear that the precise legal basis for the placement was irrelevant and that the critical fact was that the offender was on home detention:
For purposes of today’s analysis, “probation” is not distinguishable from “community corrections,” and the terms will be used interchangeably. A trial court has the authority to place a convicted offender “in home detention under IC 35-38-2.5 instead of commitment to the department of correction.” Ind.Code § 35 — 38—1—21(b) (2012). Home detention may be imposed as either a condition of probation or as an alternative placement that is part of an offender’s community corrections program. See Ind.Code § 35-38-2.5-5 (2012) and Ind. .Code § 35-38-2.6-4.5 (2012). “Both probation and community corrections programs serve as alternatives to commitment to the Department of Correction and both are made at the sole discretion of the trial court.” Cox v. State, 706 N.E.2d 547, 549 (Ind.1999). Placement under either probation or a community corrections program is’ “a matter of grace and a conditional liberty that is a favor, not a right.” Id. (internal quotations and citations omitted). -The similarities between the two programs have led to common treatment in appellate review of a trial court’s decision to revoke either, but our Court noted in Cox that “there may be other matters related to community corrections and probation which the law will not treat in the same way.” Id. at 549 n. 6. The present case does not call for differing treatment. Although conditions of probation and other rules governing the process of probation are listed under Indiana Code [chapter] 35-38-2 et seq. and rules governing the direct placement in a community corrections program are governed by Indiana Code [chapter] 35-38-2.6 et seq., home detention under either is not necessarily different in its purpose or execution. The difference rather relates to the administration and costs of the program. See Ind.Code § 35-38-2.5-5(c) (“The court may order supervision of an offender’s home detention to be provided by the probation department for the court or by a community corrections program that provides supervision of home detention.”) and Ind.Code § 35-38-2.5-5.5(d) (“A probation department or community corrections program that'supervises an offender on home detention is responsible for the expenses of the supervision.”).
Vanderkolk, 32 N.E.3d at 776-77 (emphases added).
[21] Here, the majority relies on a later passage from Vanderkolk, in which the Court did not specifically mention the home-detention aspect of the case:
We therefore hold that Indiana probationers and community corrections participants, who have consented or been clearly informed that the conditions of their probation or community corrections program unambiguously authorize warrantless and suspicionless searches, *1063 may thereafter be subject to such searches during the period of their probationary or community corrections status.
Id. at 779. However, it is my opinion that the Court’s introductory home-detention discussion, quoted above, served to limit its holding to searches of probationers (and community-corrections participants) who have been placed on home detention. If that was not the Court’s intention, then the in-depth discussion of home detention was pointless.
[22] This limited reading of Vander-kolk is consistent with the United States Supreme- Court’s decisions in this area. In 1987, the Court described probation’s place on the “continuum” of sentencing options:
Probation is simply one point (or, more accurately, one set of points) on a continuum of possible punishments ranging from solitary confinement' in a maximum-security facility to a few hours of mandatory community service. ' A number of different options lie between those extremes, including confinement in a medium- or minimum-security facility, work-release programs, “halfway houses,” and probation — -which can itself be more or less confining -depending upon the number and severity of restrictions . imposed.
Griffin v. Wisconsin, 483 U.S. 868, 874, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987). In Griffin, the Court upheld a search that was conducted pursuant to a state regulation that permitted “any probation officer to search a probationer’s home without a warrant as long as his supervisor approves and as long as there are ‘reasonable grounds’ to believe the presence of contraband[.]” Id. at 870, 107 S.Ct. 3164 (emphasis added).
[23] Fourteen years after Griffin, in United States v. Knights, the Court addressed the search of the apartment of an offender whose ■ conditions of probation purported to allow searches “with or without ... reasonable cause” (i.e., suspicion-less searches). 534 U.S. 112, 114, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001). In upholding the search in question, the Court, looked at the totality-of the circumstances, treating the seemingly limitless probation search condition as. merely one “salient circumstance.” Id. at 118, 122 S.Ct. 587. The Court did not say that the search condition, standing alone, was conclusive. To the contrary, notwithstanding the fact that the search condition specifically provided for suspicionless searches, the Court expressly based its holding on the fact that the officer had reasonable suspicion. Id. at 122, 122 S.Ct. 587 (“We therefore hold that the warrantless search of Knights, supported by reasonable suspicion and authorized by a condition of - probation, was reasonable within the meaning of the Fourth Amendment.”). ‘
[24] It’ is true that the Court most recently held that parolees in California, who are subject to suspicionless searches pursuant to state statute, cannot challenge parole searches based on lack of reasonable suspicion. Samson v. California, 547 U.S. 843, 126 S.Ct. 2193, 165 L.Ed.2d 250 (2006). In doing so, however, the Court made a point to distinguish between parolees and probationers: •
As we noted in Knights, parolees are on the “continuum” of state-imposed punishments. On this continuum, parolees have fewer expectations of privacy.than probationers, because parole is more akin to imprisonment than probation is to' imprisonment.- As this Court has pointed out, parole is an established variation on imprisonment, of convicted criminals. The essence of parole is release from prison, before the. .completion of sentence, on the condition that the prisoner abide by certain rules during , .the balance of the sentence. In most cases, the State is willing to extend pa *1064 role only because it is able to condition it upon compliance with certain requirements. See also United States v. Reyes, 283 F.3d 446, 461 (C.A.2 2002) (“[F]ederal supervised release, in contrast to probation, is meted out in addition to, not in ' lieu- of, incarceration”); United States v. Cardona, 903 F.2d 60, 63 (C.A.1 1990) (“[0]n the Court’s continuum of possible punishments, parole is the stronger medicine; ergo, parolees enjoy even less of the average citizen’s absolute liberty than do probationers ”).
Id. at 850,126 S.Ct. 2193 (emphasis added, citations omitted, formatting altered).
[25] In Vanderkolk, our Supreme Court extended Samson to Indiana probationers (and community-corrections participants) who have been placed on.home detention. Here, the majority understood Vanderkolk to take a much more significant step and extend Samson to oil probationers. I do not believe Vanderkolk extends so far.
[26] Applying Samson to probationers on home detention made sense, since a probationer pn home detention is just as restricted as some parplees,' and even more restricted than other parolees. An offender who is on home detention is- in many ways a prisoner, and a search of his property is much like a search of a prison cell. But,as the United States Supreme Court recognized in Griffin, there are different levels of probation that constitute different points on the continuum between solitary confinement in a maximum-security prison- and a few hours of community service. 483. U.S. at 874, 107 S.Ct. 3164. Probation can be “more or less confining depending upon the number and severity of restrictions imposed.” Id.
[27] Extending Vanderkolk' to all probationers would render these differences meaningless. A first-time offender on unsupervised probation for Class C misdemeanor driving without a license could be subjected to suspicionless searches[7] just the same as a person on intensive, home-detention probation following a lengthy prison term for armed robbery. The United States Supreme Court did not sanction such a result in Samson, the Indiana Supreme Court did not sanction such a result in Vanderkolk, and this Court should not sanction such a result here.
[28] Instead, we should simply affirm the trial court’s well-reasoned conclusion that the search of Hodges’ garage was justified by a reasonable suspicion that Hodges was engaged in criminal activity. Hodges was not on home detention like the offender in- Vanderkolk, nor was he ■ on some other form of highly restrictive probation. He was on standard probation for a non-violent, non-drug-related crime. Therefore, I would hold that (1) Hodges could be subjected to a probation search only upon reasonable suspicion of criminal activity and (2) reasonable suspicion existed in this case, -

. Upon questioning at oral argument in this case, the deputy attorney general also read Vanderkolk to extend to all probationers, including those on unsupervised probation.