

FILED

Nov 30 2018, 10:21 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Brian A. Karle
Ball Eggleston, PC
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Jesse R. Drum
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| James E. Jarman,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | November 30, 2018<br><br>Court of Appeals Case No.<br>18A-CR-1034<br><br>Appeal from the Tippecanoe<br>Superior Court<br><br>The Honorable Randy J. Williams,<br>Judge<br><br>Trial Court Cause No.<br>79D01-1703-F4-16 |

**Vaidik, Chief Judge.**

# Case Summary

[1]     James E. Jarman appeals his convictions for possession of methamphetamine, dealing in a synthetic drug or synthetic drug lookalike substance, and possession of paraphernalia.  The convictions arose from a suspicionless search

of Jarman, who was on community corrections for a prior conviction. The Indiana Supreme Court has held that suspicionless searches of a community-corrections participant are permissible under the Fourth Amendment to the U.S. Constitution, but only if the conditions of the program unambiguously authorize such searches. Here, Jarman signed a waiver consenting to searches "without a warrant and without probable cause." Jarman contends that this language did not unambiguously authorize searches with no suspicion at all and that the suspicionless search of his person therefore violated the Fourth Amendment. Given the well-established distinction between "probable cause" and the lesser degrees of suspicion sometimes required by the Fourth Amendment, we agree with Jarman and reverse his convictions.

# Facts and Procedural History

[2] In March 2017, Jarman was under the supervision of Tippecanoe County Community Corrections in connection with a 2015 conviction for felony domestic battery of his ex-wife. On the morning of March 16, two community-corrections officers went to Jarman's house after hearing from an anonymous source that Jarman's ex-wife "was possibly living at the residence," that Jarman had purchased alcohol and had been drinking, and that Jarman "possibly had been abusing his [A]dderall medication." Tr. p. 10.

[3] At the house, the officers had Jarman do a breathalyzer test, which he passed. When asked if there was anyone else in the house, Jarman said that a male friend of his was there, but the officers conducted a "safety sweep" of the house

and found Jarman's ex-wife in the attic. *Id.* at 8. One of the officers handcuffed Jarman and "conducted a pat down on him." *Id.* The officer found "a knotted baggie containing an unknown white powdery substance." *Id.* at 12. Jarman said that it was "joint medication that he uses for joint pain." *Id.* at 13. The officer asked where the bottle for the medication was, and Jarman said that it was in a locked cabinet in the basement. Jarman gave the officer a key to the cabinet, and the officer proceeded to find methamphetamine, several bags of a green, leafy substance (that was not marijuana), a synthetic urine kit, two handwritten ledgers, stamp baggies, a cut straw, a scale, and a glass smoking device. *Id.* at 14-16.

[4]     The State charged Jarman with dealing and possession of methamphetamine, dealing and possession of a synthetic drug or synthetic drug lookalike substance, and possession of paraphernalia. The case proceeded to a bench trial, where Jarman promptly moved to suppress all evidence obtained after the warrantless search of his person, arguing that the search violated the Fourth Amendment. The State responded that the search of Jarman was permissible because he "waived his [F]ourth [A]mendment rights" as a condition of admission to community corrections. *Id.* at 9. The State introduced a copy of the "Community Correction Policy Concerning Search and Seizures – Waiver of Fourth Amendment Rights" that Jarman had signed, which provided, in part:

> In consideration of the opportunity to participate in a
> Community Corrections program rather than serve my sentence

through the Department of Correction or other secure or more restrictive environment, I acknowledge and agree that I hereby waive my rights concerning searches and seizures under the Fourth and Fourteenth Amendments of the United States Constitution and under Article 1, §11 of the Indiana Constitution. Specifically, I hereby consent to allow employees of Community Corrections or law enforcement officers to search my person or property without a warrant and without probable cause.

Ex. 21. The trial court took all matters under advisement and then issued an order denying Jarman's motion to suppress and finding him guilty of all charges except dealing in methamphetamine. The court later merged the synthetic-drug possession count into the more serious synthetic-drug dealing count and imposed a total sentence of four years, with two of those years to be served with Tippecanoe County Community Corrections.

Jarman now appeals.

# Discussion and Decision

Jarman contends that the trial court should have granted his motion to suppress and found him not guilty on all charges. He renews his argument that the search of his person violated the Fourth Amendment, which provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

While Jarman is the party appealing, whether a search was constitutional is a question of law we review de novo. *Kelly v. State*, 997 N.E.2d 1045, 1050 (Ind. 2013). And because the search here was done without a warrant, the State bears the burden of convincing us it fell within an exception to the warrant requirement. *See id.*

Jarman makes two arguments in his brief: (1) that the officers who searched him did so without reasonable suspicion that he was engaged in illegal behavior and (2) that his consent to searches without probable cause did not also constitute consent to suspicionless searches. The State offers two responses, both based on Jarman's consent to searches "without a warrant and without probable cause." First, the State contends that Jarman, by giving that consent, "gave officers probable cause (and a warrant) to search him and his property" and "also necessarily gave them reasonable suspicion because that 'is a less demanding standard than probable cause.'" Appellee's Br. p. 7 (quoting *State v. Schlechty*, 926 N.E.2d 1, 7 (Ind. 2010), *reh'g denied*). The State cites no authority for the novel proposition that Jarman "gave" officers probable cause (and therefore the lesser-included reasonable suspicion) by signing the waiver, and we are not aware of any. By signing the waiver, Jarman did not agree that officers **had** probable cause to search him; rather, he agreed that officers **did not need** probable cause to search him.[1]

---

[1] The State does not argue that the search of Jarman was justified by **actual** suspicion that he was engaged in some illegal activity, notwithstanding the fact that his ex-wife—the victim of his underlying domestic-battery

[8] No matter, the State says: Jarman's waiver of Fourth Amendment rights was complete, not partial, meaning that he could be searched with no suspicion at all. The State cites *State v. Vanderkolk*, where our Supreme Court held that suspicionless searches of a community-corrections participant are permissible if the participant has "consented or been clearly informed that the conditions of their probation or community corrections program unambiguously authorize" such searches. 32 N.E.3d 775, 779 (Ind. 2015). In arguing that Jarman waived all Fourth Amendment rights and consented to suspicionless searches, the State relies on the following passage in the waiver: "I hereby waive my rights concerning searches and seizures under the Fourth and Fourteenth Amendments of the United States Constitution and under Article 1, §11 of the Indiana Constitution." Read in isolation, that language would certainly seem to support the State's argument. However, that seemingly complete waiver must be read in light of the next sentence: "**Specifically**, I hereby consent to allow employees of Community Corrections or law enforcement officers to search my person or property without a warrant and without probable cause." (Emphasis added.) The use of the word "specifically" means that this second sentence defined the actual scope of Jarman's waiver (and consent) made in the first sentence. Under *Vanderkolk*, then, the question we must answer is whether a waiver that allows searches "without a warrant and without probable cause"

---

offense—had been found hiding in the attic. The State argues only that Jarman "gave" officers reasonable suspicion by signing the waiver.

also "unambiguously authorizes" suspicionless searches. We hold that it does not.

[9]     As already noted, the State itself acknowledges that "reasonable suspicion" is "a less demanding standard than probable cause." Appellee's Br. p. 7. And while not all searches need to be supported by probable cause, some degree of suspicion is often required. As the U.S. Supreme Court explained in *United States v. Knights*, a case involving a search of the apartment of a person on probation:

> The degree of individualized suspicion required of a search is a determination of when there is a sufficiently high probability that criminal conduct is occurring to make the intrusion on the individual's privacy interest reasonable. Although the Fourth Amendment ordinarily requires the degree of probability embodied in the term "probable cause," a lesser degree satisfies the Constitution when the balance of governmental and private interests makes such a standard reasonable.

534 U.S. 112, 121 (2001). Given this well-established distinction between "probable cause" and lesser degrees of suspicion, the statement "I agree to a search without probable cause" does not **unambiguously** mean "I agree to a search without reasonable suspicion." If the State wanted Jarman to be subject to suspicionless searches as a condition of entering community corrections, it should have included in its waiver form language like "without suspicion," "without reasonable suspicion," "without reasonable cause," or "without cause." *See, e.g., Samson v. California*, 547 U.S. 843 (2006) (holding that suspicionless search did not violate Fourth Amendment because it was

conducted pursuant to parole statute allowing searches "with or without a search warrant **and with or without cause**" (emphasis added)). Because the waiver did not include any such language, we reverse.[2]

[10] Reversed.

Riley, J., and Kirsch, J., concur.

---

[2] In a single sentence in the last paragraph of its brief, the State cites the U.S. Supreme Court's holding that when police lawfully arrest a suspect, "a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but it is also a reasonable search under that Amendment." *United States v. Robinson*, 414 U.S. 218, 235 (1973) (formatting altered). To the extent the State meant to suggest that the search of Jarman fell within the search-incident-to-arrest exception to the warrant requirement, it waived the issue by failing to develop a cogent argument. *See* Ind. Appellate Rule 46(A)(8)(a) (argument section of appellant's brief "must contain the contentions of the appellant on the issues presented, supported by cogent reasoning"). In the sentence following the citation to *Robinson*, the State returns to its argument that Jarman "waived" the protection of the Fourth Amendment in order "to participate in community corrections." Appellee's Br. p. 8.