FILED

Aug 10 2020, 9:15 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANT

Curtis T. Hill, Jr.
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Jeffrey A. Baldwin
Tyler D. Helmond
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

State of Indiana,
*Appellant-Plaintiff,*

v.

Jarrel Luke Ellis,
*Appellee-Defendant.*

August 10, 2020

Court of Appeals Case No.
20A-CR-61

Appeal from the Marion Superior
Court

The Honorable Jennifer Harrison,
Judge

Trial Court Cause No.
49G20-1906-F2-24884

**Tavitas, Judge.**

## Case Summary

The State appeals the trial court's order granting Jarrel Ellis' motion to suppress evidence seized as a result of a compliance check of Ellis' residence while Ellis was serving a community corrections sentence. We reverse and remand.

## Issue

The State raises one issue for our review, which we revise and restate as whether the trial court erred by granting Ellis' motion to suppress.

## Facts

The relevant events occurred in 2019, as Ellis was serving a home detention sentence with Marion County Community Corrections ("Community Corrections"), following Ellis' guilty plea for dealing in cocaine, a Class B felony. Pursuant to Ellis' Community Corrections placement, Ellis signed a "Marion County Community Corrections Contract." State's Ex. 2. The Contract provided, in relevant part:

> You waive your right against search and seizure, and shall permit MCCC staff, or any law enforcement officer acting on MCCC's behalf, to search your person, residence, motor vehicle, or any location where your personal property may be found, to insure compliance with the requirements of community corrections.

*Id.* Jameil Parker, Ellis' case manager for Community Corrections, began to monitor Ellis in January 2019. Parker developed suspicions regarding Ellis' compliance with the terms of the Contract because Ellis "requested to visit

expensive restaurants while he was workin[g] a part-time temp[orary] service job. . . ." Tr. Vol. II pp. 5-6. Parker shared her suspicions with Jill Jones, a Community Corrections law enforcement liaison, and asked Jones to complete a compliance check at Ellis' home.

[4] On June 20, 2019, Jones went to Ellis' residence with "the Northwest Flex Team" of law enforcement officers to complete the compliance check.[1] Tr. Vol. II p. 25; Appellant's App. Vol. II p. 12. The Flex Team conducted a "protective sweep" to ensure the safety of the Flex Team and the compliance officer before starting the compliance check. Appellant's App. Vol. II p. 13. In Ellis' bedroom, the officers observed: (1) a plastic container with a green leafy substance, which the officers believed to be marijuana; and (2) a fake book with a hidden compartment that held several bundles of cash. The officers ended the compliance check of the residence and applied for a search warrant. When the officers executed the search warrant, the ensuing search yielded several weapons; a substance believed to be cocaine; paraphernalia consistent with drug dealing; digital scales; and a large amount of cash.

[5] On June 24, 2019, the State charged Ellis with: Count I, dealing in cocaine, a Level 2 felony; Count II, possession of cocaine, a Level 3 felony; Counts III, IV, V, VI, and VII, unlawful possession of a firearm by a serious violent felon, Level 4 felonies; Count VIII, neglect of a dependent, a Level 5 felony; Count

---

[1] Jones testified that the Northwest Flex Team included Scott Nichols, Chris Chatman, Officer Chin, Officer Soloman, and Tiffany Wren. Jones also testified that she does not conduct compliance checks alone.

IX, escape, a Level 6 felony; Count X, possession of a controlled substance, a Level 6 felony; and Count XI, possession of marijuana, a Class A misdemeanor.

[6] On December 4, 2019, Ellis filed a motion to suppress the evidence seized during the search of his home. Ellis argued that the search violated his rights under Article 1, Section 11 of the Indiana Constitution and the Fourth Amendment to the United States Constitution because: (1) the Community Corrections Contract did not unambiguously provide that Ellis waived his rights against a suspicionless search; and (2) law enforcement did not have reasonable suspicion to search Ellis' home.

[7] At the hearing on December 10, 2019, the trial court orally granted Ellis' motion to suppress. Specifically, the trial court found that the Community Corrections Contract did not include a waiver of searches without reasonable suspicion. The State now appeals pursuant to Indiana Code Section 35-38-4-2(5).[2]

---

[2] The statute provides:

> Appeals to the supreme court or to the court of appeals, if the court rules so provide, may be taken by the state in the following cases: . . .
>
>> (5) From an order granting a motion to suppress evidence, if the ultimate effect of the order is to preclude further prosecution of one (1) or more counts of an information or indictment.

Ind. Code § 35-38-4-2(5). The State contends that the "suppression of evidence prevents the State from going forward on the charges." Appellant's Br. p. 4.

# Analysis

[8] The State argues that the trial court improperly granted Ellis' motion to suppress.

> When the State appeals from a negative judgment, it bears the burden to show that the trial court's ruling on the suppression motion was contrary to law. . . . We evaluate the trial court's findings of fact deferentially, neither reweighing the evidence nor reassessing the credibility of the witnesses. . . . We will affirm if we find within the record substantial evidence of probative value to support the judgment. . . . But we review the trial court's conclusions of law, . . . *de novo*.

*State v. Brown,* 70 N.E.3d 331, 335 (Ind. 2017) (citations and quotations omitted).

[9] The issue for our determination is not whether there was reasonable suspicion to search Ellis' home, but only whether, based upon the terms of the Community Corrections Contract, Ellis waived his right to challenge the search.[3] The trial court held that, notwithstanding the Contract, Community Corrections lacked reasonable suspicion to search Ellis' home.

[10] In *State v. Vanderkolk,* 32 N.E.3d 775 (Ind. 2015), our Supreme Court clarified the law regarding searches of probation and community corrections

---

[3] Neither Ellis nor the State make separate arguments that the analysis is different on this issue between the Indiana Constitution and the Fourth Amendment on this issue; therefore, we need not address the issue in our opinion.

participants.[4] Vanderkolk resided with Jordan Sullivan, who was on home detention through a community corrections program. Community corrections officers conducted a "routine warrantless search to assure Sullivan's compliance with the conditions of the program." *Vanderkolk*, 32 N.E.3d at 776. The search of the home revealed illegal drugs and paraphernalia, and Vanderkolk was charged as a result. The trial court denied Vanderkolk's motion to suppress the evidence found in the common areas of the home because the officers "had consent to search." *Id.* The trial court, however, granted the motion to suppress evidence found in Vanderkolk's private bedroom.

[11] The State appealed and relied on *Samson v. California*, 547 U.S. 843, 126 S. Ct. 2193 (2006), for the proposition that the search did not violate the Fourth Amendment of the United States Constitution because of Sullivan's community corrections status and Sullivan's consent to the search. Vanderkolk countered that: (1) a person in a probation or community corrections home detention program is entitled to Fourth Amendment protections; and (2) officers must have reasonable suspicion of either criminal activity or a violation to conduct a compliance check.

[12] On appeal, our Supreme Court acknowledged that: (1) a trial court may place a person on home detention as part of a community corrections program, *see* Ind. Code § 35-38-2.6-4.5; (2) "[p]lacement under either probation or a community

---

[4] For purposes of the Supreme Court's opinion in *Vanderkolk*, our Supreme Court noted that the terms "probation" and "community corrections" would be used interchangeably.

corrections program is a 'matter of grace and a conditional liberty that is a favor, not a right[,]'" *Vanderkolk,* 32 N.E.3d at 777 (quoting *Cox v. State*, 706 N.E.2d 547, 549 (Ind. 1999)); and (3) probation searches "are necessary to the promotion of legitimate [state] interests." *Id.* at 779.

[13] In analyzing *Samson*, the Court held: "*Samson* dispenses with the need for reasonable suspicion where there exists a valid parole search condition permitting such searches, it does not authorize suspicionless searches based on a parolee's status alone." *Id.* Although *Samson* involved a parole search condition, whereas *Vanderkolk* involved a search pursuant to a home detention placement, our Supreme Court found *Samson* instructive. The Court held:

> Because probation, like parole, involves the conditional release of a prisoner who would otherwise be subject to unrestricted searches during his or her incarceration, because neither probationers nor parolees enjoy the absolute liberty to which other citizens are entitled, because probation searches are necessary to the promotion of legitimate government interests, because the willingness of judicial officers to grant conditional release is likely to be impaired if supervision is uncertain or difficult, and because searches of probationers or community corrections participants require that they be unambiguously informed of a clearly expressed search condition in the conditions of release to probation or community corrections, we conclude that the holding in *Samson* is applicable to probationers and community corrections participants. We therefore hold that *Indiana probationers and community corrections participants, who have consented or been clearly informed that the conditions of their probation or community corrections program unambiguously authorize warrantless and suspicionless searches*, *may thereafter be subject to such searches during the period of their probationary or community corrections status*.

*Id.* at 779 (emphasis added).

[14]     After *Vanderkolk*, our Court decided *Hodges v. State,* 54 N.E.3d 1055 (Ind. Ct. App. 2016), which we find persuasive. In *Hodges*, the defendant signed the following acknowledgement of the terms of his probation: "You waive your right against search and seizure, and shall permit a Probation Officer, or any law enforcement officer acting on a Probation Officer's behalf, to search your person, residence, motor vehicle, or any location where your personal properly may be found, to insure compliance with probation." *Hodges*, 54 N.E.2d at 1057. Officers then received several tips that Hodges was manufacturing methamphetamine. Subsequently, a warrantless search of Hodges' garage yielded a weapon, a white crystal-like substance, and other items used to manufacture methamphetamine. Accordingly, the State charged Hodges with various drug offenses. Hodges filed a motion to suppress the seized evidence, which the trial court denied.

[15]     On appeal, Hodges argued that the search was not supported by reasonable suspicion. We noted: "The crux of the *Vanderkolk* holding is that a probation search need not be supported by reasonable suspicion and may be predicated solely upon a valid search condition contained in the conditions of probation. Thus, a probationer's argument that a probation search lacked reasonable suspicion is unequivocally no longer a legitimate objection . . . ." *Id.* at 1059.

[16]     In analyzing the terms of Hodges' probation, our Court held that the language, "albeit somewhat minimal, was sufficient to constitute a clearly expressed

search condition, as it specifically advised Hodges that he was waiving his 'right against search and seizure.'" *Id.* at 1061. Our Court further held:

> Although Hodges posits that this mere reference to the right against search and seizure did not clearly express to him exactly what constitutional protections he was giving up when consenting to the rules of probation, we agree with the State that it would make little sense to require a boilerplate reference to our federal or state constitutions in order for the search condition to be considered valid. In light of our supreme court's expansive holding in *Vanderkolk*, and its observation that "the willingness of judicial officers to grant conditional release is likely to be impaired if supervision is uncertain or difficult," 32 N.E.3d at 779, we think that the language used here was within constitutional parameters.

*Id.*

[17] Here, pursuant to Ellis' home detention placement, he agreed to the following:

> You waive your right against search and seizure, and shall permit MCCC staff, or any law enforcement officer acting on MCCC's behalf, to search your person, residence, motor vehicle, or any location where your personal property may be found, to insure compliance with the requirements of community corrections.

State's Ex. 2. This language is almost identical to the waiver provision in *Hodges*. As in *Hodges*, we conclude that this language was sufficient to waive Ellis' rights against search and seizure and to authorize a suspicionless search. Accordingly, the officers did not need reasonable suspicion to search Ellis' residence.

[18]     Despite the almost identical language, Ellis attempts to distinguish *Hodges* based

upon *Jarman v. State,* 114 N.E.3d 911 (Ind. Ct. App. 2018), *trans. denied.*

Jarman signed a community corrections agreement that provided as follows:

> In consideration of the opportunity to participate in a
> Community Corrections program rather than serve my sentence
> through the Department of Correction or other secure or more
> restrictive environment, I acknowledge and agree that I hereby
> waive my rights concerning searches and seizures under the
> Fourth and Fourteenth Amendments of the United States
> Constitution and under Article 1, § 11 of the Indiana
> Constitution.  Specifically, I hereby consent to allow employees
> of Community Corrections or law enforcement officers to search
> my person or property without a warrant and without probable
> cause.

*Jarman*, 114 N.E.3d at 913.  Officers searched Jarman's residence based on an

anonymous tip and found a powdery substance on Jarman's person,

methamphetamine, and several other items.  Jarman was charged with several

drug offenses and moved to suppress the seized evidence.  The trial court

denied Jarman's motion.

[19]     On appeal, our Court reversed the trial court's denial of the motion to suppress

and held:

> In arguing that Jarman waived all Fourth Amendment rights and
> consented to suspicionless searches, the State relies on the
> following passage in the waiver: "I hereby waive my rights
> concerning searches and seizures under the Fourth and
> Fourteenth Amendments of the United States Constitution and
> under Article 1, § 11 of the Indiana Constitution."  Read in
> isolation, that language would certainly seem to support the

State's argument. However, that seemingly complete waiver must be read in light of the next sentence: "**Specifically**, I hereby consent to allow employees of Community Corrections or law enforcement officers to search my person or property without a warrant and without probable cause." The use of the word "specifically" means that this second sentence defined the actual scope of Jarman's waiver (and consent) made in the first sentence. Under *Vanderkolk*, then, the question we must answer is whether a waiver that allows searches "without a warrant and without probable cause" also "unambiguously authorizes" suspicionless searches. We hold that it does not.

*Id.* at 914-15 (emphasis in original). Our Court went on to conclude that, "[i]f the State wanted Jarman to be subject to suspicionless searches as a condition of entering community corrections, it should have included in its waiver form language like 'without suspicion,' 'without reasonable suspicion,' 'without reasonable cause,' or 'without cause.'" *Id.* at 915 (citations omitted).

[20] We respectfully disagree with the reasoning and outcome in *Jarman*. The language of the community corrections agreement in *Jarman* waived any requirement for a warrant, and the agreement was not required to specifically mention a waiver of "reasonable suspicion." Moreover, even if the reasoning in *Jarman* is correct, we do not find *Jarman* applicable here. *Jarman* held that the second sentence in Jarman's contract limited the scope of the waiver to exclude suspicionless searches; whereas Ellis' Contract does not contain comparable limiting language. Accordingly, Ellis' reliance upon *Jarman* is misplaced.

[21] Our Supreme Court has held that community corrections participants "who have *consented or been clearly informed that the conditions of their . . . community*

*corrections program unambiguously authorize warrantless and suspicionless searches* may thereafter be subject to such searches during the period of their . . . community corrections status." *Vanderkolk*, 32 N.E.3d at 779 (emphasis added). As in *Hodges*, Ellis' Community Corrections Contract unambiguously authorized warrantless and suspicionless searches, without limitation. Accordingly, the officers did not need reasonable suspicion to search Ellis' residence. The trial court's decision to grant Ellis' motion to suppress was erroneous.

## Conclusion

[22] The trial court improperly granted Ellis' motion to suppress. We reverse and remand to the trial court to enter an order consistent with our opinion.

[23] Reversed and remanded.

Kirsch, J., and Pyle, J., concur.